A99A0699. MERCHANT et al. v. CANAL INSURANCE COMPANY.
(520 SE2d 57)

SMITH, Judge.

This is the fourth appearance of this case before this court, and the facts of the underlying vehicular collision are fully set forth in our earlier decisions. In the case's most recent published appearance, we determined the priority of two uninsured motorist insurers for purposes of "stacking" coverage, finding that Northbrook Property & Casualty Company rather than Canal Insurance Company was the primary uninsured motorist carrier for Larry Merchant and the other individual plaintiffs. *Canal Ins. Co. v. Merchant,* 225 Ga. App. 61, 63 (483 SE2d 311) (1997).[1] We now reach the question of the

---

[1] See also *Northbrook Property &c. Co. v. Merchant,* 215 Ga. App. 273 (450 SE2d 425) (1994); *Merchant v. Canal Ins. Co.,* 233 Ga. App. XXVII (1998).

apportionment of coverage among three insurers: Northbrook, Canal, and the insurer of Rufus Wiggins, the driver originally at fault in the collision. On cross-motions for summary judgment, the trial court found that Canal was entitled to a complete set-off under OCGA § 33-7-11 (b) (1) (D) (ii) because Wiggins was an underinsured rather than uninsured motorist. Because the trial court misapplied the controlling law and because the record contains insufficient facts to determine the amount of set-off to which Canal is entitled, we reverse the grant of summary judgment to Canal and remand for further proceedings consistent with this opinion.

This court has already determined that Northbrook is the primary uninsured motorist carrier and Canal is the secondary carrier. *Canal Ins. Co. v. Merchant*, supra at 63. Northbrook was held entitled to a set-off for the amounts it paid as workers' compensation, *Northbrook*, supra, but its original coverage limits are not revealed by the record. It is undisputed, however, that Rufus Wiggins, the driver at fault, had liability coverage in the amount of $15,000/$30,000 (the so-called "minimum limits" under OCGA § 33-7-11 (a) (1) (A)) and that Canal's uninsured or underinsured motorist coverage was also in the amount of $15,000/$30,000.

OCGA § 33-7-11 (b) (1) (D) provides as follows:

"Uninsured motor vehicle" means a motor vehicle, other than a motor vehicle owned by or furnished for the regular use of the named insured, the spouse of the named insured, and, while residents of the same household, the relative of either, as to which there is:

(i) No bodily injury liability insurance and property damage liability insurance;

(ii) Bodily injury liability insurance and property damage liability insurance with available coverages which are less than the limits of the uninsured motorist coverage provided under the insured's insurance policy, but the motor vehicle shall only be considered to be uninsured for the amount of the difference between the available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle and the limits of the uninsured motorist coverage provided under the insured's motor vehicle insurance policy; *and for this purpose available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle shall be the limits of coverage less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage.*

(Emphasis supplied.) A vehicle therefore is considered "uninsured" only to the extent of the difference between the "available" liability coverage on the vehicle and the limits of the uninsured motorist coverage at issue, but "available" coverage is construed as only those amounts not already expended in the payment of other claims. In the amendment of this Code section in 1980, the definition of uninsured motor vehicles "was expanded to include the underinsured motor vehicle situation." *Hall v. Regal Ins. Co.*, 202 Ga. App. 511, 512 (1) (414 SE2d 669) (1991).

The trial court's order erroneously recites that this court's previous opinion in *Canal Ins. Co. v. Merchant*, supra, held that "Canal was not the 'primary' uninsured motorist carrier and therefore did not afford uninsured motorist coverage to the 'Movants.'" This court did find that Canal was not the primary uninsured motorist carrier, but we also noted that "[w]hen more than one source of uninsured or underinsured motorist coverage is available, claimants may 'stack' the policies, but the priority of the multiple UM carriers must be determined." Id. at 62. While the trial court concluded and the appellee argues that underinsured motorists are not entitled to coverage, that rule was eliminated by the amendment of OCGA § 33-7-11 (b) (1) (D) (ii) in 1980 as well as the amendment effective January 1, 1987, adding the language emphasized above. Compare *Bohannon v. Futrell*, 189 Ga. App. 340, 343-344 (3) (375 SE2d 637) (1988), aff'd, 259 Ga. 162 (377 SE2d 853) (1989), with *Harwell v. Continental Ins. Co.*, 183 Ga. App. 410, 412 (359 SE2d 172) (1987). Neither *Dewberry v. State Farm Ins. Co.*, 197 Ga. App. 248, 249 (398 SE2d 266) (1990), nor *Futch v. J.C. Penney Ins. Co.*, 182 Ga. App. 169 (354 SE2d 869) (1987), cited by appellee, involved multiple claimants.

Accordingly, we must reverse and remand this case so that the trial court may first determine the coverages "available" to each plaintiff under the tortfeasor's policy, as defined in OCGA § 33-7-11 (b) (1) (D) (ii), and then calculate the difference between that amount and "the limits of the uninsured motorist coverage provided" by Northbrook and Canal, id., "stacking" them in the order previously determined by this court.

*Judgment reversed and remanded. Pope, P. J., and Eldridge, J., concur.*

DECIDED JUNE 28, 1999.

*Killian & Boyd, Robert P. Killian*, for appellants.
*McNatt, Greene & Thompson, Troy L. Greene*, for appellee.