## A02A1712. CROUCH v. FEDERATED MUTUAL INSURANCE COMPANY.
### (571 SE2d 574)

ELDRIDGE, Judge.

Plaintiff Barbara Crouch appeals from the Superior Court of DeKalb County's order granting summary judgment to Federated Mutual Insurance Company ("Federated"), which order arose on the following set of facts.

Driving westbound on Snapfinger Road, Crouch was involved in a head-on collision with Gene Nixon after Nixon's eastbound vehicle crossed into Crouch's lane. Crouch sustained injury. She settled with Nixon under the $50,000 liability provision of his insurance policy with Georgia Farm Bureau.

The automobile Crouch was driving belonged to Town Center Kia, a dealership owned by Crouch's brother. Crouch was a permissive driver of the vehicle. Town Center Kia is covered under a garage policy issued by Federated. Crouch filed against Federated, seeking uninsured/underinsured motorist ("UM") benefits. Ms. Crouch also filed for $15,000 UM benefits under her own policy with State Farm Insurance.

Federated's insurance contract with Town Center Kia splits UM coverage into two "options." The first option caps UM coverage at $1,000,000 for "directors, officers, partners, or owners" of the dealership and includes in such limit a " 'family member' who qualif[ies] as an insured." With regard to this UM "Limit of Insurance" option, "family member" is specifically defined as "a person related to the director, officer, partner or owner of the named insured by blood, marriage or adoption who is a resident of that individual's household including a ward or foster child." The second option caps UM coverage at $40,000 for "any other person qualifying as an 'insured.' " It is undisputed that Crouch does not reside in her brother's household.

Federated filed a motion for summary judgment, claiming that because the $40,000 UM coverage available to Crouch under the Federated insurance contract is less than the $50,000 liability coverage Crouch obtained under Nixon's policy, the rules of set-off preclude Crouch's recovery of UM benefits under the Federated policy. The trial court agreed and granted summary judgment. Crouch appeals.

*Held*:

Summary judgment is proper when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of

law.[1] In that regard, "[u]nder Georgia law, uninsured motorist benefits are calculated by stacking the limits of all of the available uninsured motorist coverage and setting off the limits of the available liability coverage."[2] Here, in "stacking" the limits of all available UM coverage in this case, the $15,000 available under Crouch's State Farm policy is combined with the $40,000 available under the Federated policy, giving Crouch an aggregate total of $55,000 in UM coverage, with primary coverage to be provided by Crouch's State Farm policy pursuant to OCGA § 33-34-3 (d).[3] The limits of the available liability coverage, i.e., $50,000 under Nixon's Georgia Farm Bureau policy, is then set off against the aggregate UM coverage. After set-off, Crouch may recover $5,000 in UM benefits in excess of liability, which amount is to be paid by Crouch's State Farm policy, as primary insurer.[4] Accordingly, the trial court correctly determined that because Federated was the secondary carrier and the $50,000 limit of liability in Nixon's policy exceeded the $40,000 UM benefits in the Federated policy, Crouch could not recover under the UM provision in the Federated policy. "[R]ecovery of 'underinsured' motorist coverage is limited to the amount of the difference between the limits of the coverage on the tortfeasor's automobile and that of the insured's motor vehicle policy."[5]

In an effort to circumvent this outcome and establish that the $1,000,000 option of UM coverage contained in the Federated policy is the applicable option in this case, Crouch makes the following arguments:

(a) First, Crouch contends that the two options of UM coverage contained in the Federated policy are not permitted under Georgia law, and thus, the first option of $1,000,000 in UM coverage controls. We disagree.

> Insurance policies are not excepted from the general principle of freedom to contract. An insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others. If the terms of the contract are clear and express, the courts cannot extend or enlarge the contract by

---

[1] OCGA § 9-11-56 (c).

[2] (Punctuation and footnote omitted.) *Crafter v. State Farm Ins. Co.*, 251 Ga. App. 642, 643 (554 SE2d 571) (2001); see OCGA § 33-7-11 (b) (1) (D) (ii).

[3] See OCGA § 33-34-3 (d) (primary coverage provided by insurance policy of *operator* of motor vehicle owned by retail seller).

[4] *Crafter v. State Farm Ins. Co.*, supra at 643.

[5] (Citation, punctuation and emphasis omitted.) *Harwell v. Continental Ins. Co.*, 183 Ga. App. 410, 412 (359 SE2d 172) (1987); accord *Merchant v. Canal Ins. Co.*, 238 Ga. App. 727, 729 (520 SE2d 57) (1999).

implication or construction so as to embrace an object or limitation distinct from that originally contemplated and not included in the express provisions. In those cases where restrictions or limitations have been imposed by the courts on the right of an insurer to define and limit the risk or liability assumed under the terms of a policy, it has been on the basis of mandatory statutory provisions specifying the minimum coverage to be provided.[6]

Here, both options contained in the Federated policy exceed the statutory minimum for UM coverage.[7] As long as the mandatory UM minimum is met and optional UM coverage is offered pursuant to statutory requirements, a "combination[ ] of sublimits and interests restricted to named insureds and resident relatives"[8] contravenes neither the law nor public policy.

(b) Crouch contends that the last sentence of OCGA § 33-34-3 (d) shows that the intent of the statute is "to provide excess coverage to injured third parties such as the Appellant," and thus, the $1,000,000 UM option in the Federated policy should control in order to ensure that Crouch obtains "excess" coverage as intended by the statute.[9] We cannot agree.

The intent of OCGA § 33-34-3 (d) is to allocate responsibility for primary coverage between the operator of a motor vehicle and the retail owner of same, when the vehicle is involved in an accident. The statute designates that the insurance policy of the operator of the motor vehicle (here, Crouch) will provide primary coverage and the insurance policy of the seller/owner of the motor vehicle (the Federated policy) will be a secondary carrier and "shall afford excess coverage." But only *if* there is an "excess" to secondarily cover after deter-

---

[6] (Citation and punctuation omitted.) *American Home Assurance Co. v. Smith*, 218 Ga. App. 536, 538 (1) (462 SE2d 441) (1995).

[7] OCGA § 33-7-11 (a) (1) (A).

[8] See, e.g., OCGA § 33-34-3.1 (b).

[9] OCGA § 33-34-3 (d) states,

Each policy of liability insurance issued in this state providing coverage to motor vehicles owned by a person, firm, or corporation engaged in the business of selling at retail new and used motor vehicles shall provide that, when an accident involves the operation of a motor vehicle by a person who is neither the owner of the vehicle involved in the accident nor an employee of the owner and the operator of the motor vehicle is an insured under a complying policy other than the complying policy insuring the motor vehicle involved in the accident, primary coverage as to all coverages provided in the policy under which the operator is an insured shall be afforded by the liability policy insuring the said operator and any liability policy under which the owner is an insured shall afford excess coverages. If the liability policy under which the owner is an insured and which affords excess coverage contains a provision which eliminates such excess coverage based on the existence of coverage provided in the operator's liability policy, such provision of the owner's liability policy shall be void.

mining the difference between the available liability coverage and the limits of the uninsured motorist coverage attainable under the policy issued by the primary carrier.[10] The statute cannot be read in any way so as to *entitle* or guarantee Crouch "excess UM coverage" by a secondary carrier, which appears to be the thrust of her argument.

Further, as it applies to this case, the last sentence of subsection (d) upon which Crouch relies states,

> If the liability policy under which the owner is an insured and which affords excess coverage [the Federated policy] contains a provision which eliminates such excess coverage based on the existence of coverage provided in the operator's [Crouch's] liability policy, such provision of the owner's policy shall be void.[11]

Clearly, there was no provision in the Federated insurance policy which eliminated excess coverage because of Crouch's policy with State Farm. Instead, if excess coverage under the Federated policy could be deemed "eliminated" in any fashion in this case, such occurred when Nixon's, the tortfeasor's, $50,000 liability policy with Georgia Farm Bureau was set off against Federated's $40,000 UM coverage. After the rules of set-off were properly applied, there simply was no "excess" over and beyond Crouch's $15,000 primary coverage through her State Farm policy that Federated, as a secondary carrier, was responsible for covering. "If . . . the aggregate [UM] coverage is less than or equal to the tortfeasor's liability coverage, dismissal . . . was appropriate."[12]

(c) Next, Crouch contends that the term "family member" as used in the Federated policy is ambiguous and confusing; thus, Crouch contends that the term " 'family member' should be construed as a layman would read it and includes the Appellant, the sister of the owner and an officer of the corporation," thereby making the $1,000,000 UM coverage option contained in the Federated policy applicable to her. However, we find that there is no ambiguity in the policy's definition of "family member" as it relates to the UM "Limit of Insurance" options. "When the language of a policy is unambiguous and capable of but one reasonable construction, we enforce the contract as written."[13] Here, under the plain language of the Federated insurance policy, Crouch is specifically excluded from the definition of a "family member" covered by the $1,000,000 UM option,

---

[10] *Merchant v. Canal Ins. Co.*, supra at 729.

[11] OCGA § 33-34-3 (d).

[12] (Citation omitted.) *Bohannon v. Futrell*, 189 Ga. App. 340, 344 (375 SE2d 637) (1988).

[13] (Footnote omitted.) *Crafter v. State Farm Ins. Co.*, supra at 644.

because she is not "a person related to the director, officer, partner or owner of the named insured by blood, marriage or adoption *who is a resident of that individual's household.*"[14]

Crouch also contends that the policy's "additional definitions" which define "family member" as meaning "a person related to *you* by blood, marriage or adoption who is a resident of your household, including a ward or foster child" demonstrate the ambiguity of the disputed term, "family member," because the policy's named insured is a corporation and thus cannot be a "you" as used in the definition. This reading of the contract, however, ignores the whole for an overly strict consideration of a single part. When read as a whole, it is clear that the "you" used in the policy's "additional definitions" refers to the "director, officer, partner or owner of the named insured," as stated in the earlier definition of "family member" in relation to the UM "Limit of Insurance" options. Clearly, these are individuals employed by the named insured corporation, not the corporation, itself.

(d) Finally, Crouch asserts that the Federated policy covers "three entities," yet only her brother, Steve Harrell, owner of Town Center Kia, signed the policy, and he failed to specify in what capacity he signed. Therefore, Crouch claims, the contract is deficient, and "[b]ecause of the failure of Appellee to comply with the legal requirements for the waiver and selection of UM coverage, Appellant should be entitled to coverage under the highest limit in the Policy, the $1,000,000 limit." Interestingly, this contention does not aid Crouch's cause; the deficiencies alleged by Crouch would go to the validity of the entire contract and thus call into question recovery of UM benefits under *any* option. We find, however, that Crouch did not make the instant challenge in the court below, and we cannot consider it for the first time on appeal. "We are limited to considering only those grounds raised and ruled on below by the trial court and may not consider a basis for appeal not presented at the trial level."[15]

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 26, 2002.

*Deming, Parker, Hoffman, Green & Campbell, Michael D. Deming,* for appellant.

---

[14] (Emphasis supplied.)

[15] (Punctuation and footnote omitted.) *Colonial Ins. Co. v. Progressive Cas. Ins. Co.*, 252 Ga. App. 391, 393 (1) (556 SE2d 486) (2001).

*Swift, Currie, McGhee & Hiers, Michael T. Bennett, Charles B. Marsh, Fain, Major, Wiley & Brennan, Charles A. Wiley, Jr., Sharon W. Ware*, for appellee.