IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EPIPHANY STOMS, individually and as Administratrix of the Estate of DAVID H. STOMS, decedent, and as Guardian Ad Litem of ALEXIS D. STOMS and CHAD D. STOMS, | § § § § § § | No. 692, 2014 |
| Plaintiff-Below, Appellant, | § § § | Court Below: Superior Court of the State of Delaware, |
| v. | § § | in and for New Castle County C.A. No. N14C-01-163 MJB |
| FEDERATED SERVICE INSURANCE COMPANY, | § § § | |
| Defendant-Below, Appellee. | § § | |

Submitted: September 30, 2015
Decided: October 20, 2015

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en banc*.

Upon appeal from the Superior Court.  **AFFIRMED**.

Jonathan B. O'Neill, Esquire, Kimmel, Carter, Roman, Peltz, & O'Neill, P.A., Christiana, Delaware, for Appellant.

James S. Yoder, Esquire, White and Williams LLP, Wilmington, Delaware, for Appellee.

**STRINE**, Chief Justice:

# I.    INTRODUCTION

David Stoms was killed in an automobile accident by an uninsured driver. David was driving a car belonging to his employer, Diamond Motor Sports, Inc., which had purchased uninsured motorists coverage on its insurance policy only for a limited class of drivers. In this appeal, David's widow, Epiphany Stoms ("Mrs. Stoms"), argues that the Superior Court erred in granting Federated Service Insurance Company's ("Federated Insurance") motion for summary judgment after concluding that the insurance policy it issued to Diamond Motor was neither contrary to public policy nor ambiguous.

Under Diamond Motor's insurance policy, only directors, officers, partners, and owners of the corporation had uninsured motorists coverage. David Stoms was a finance manager at Price Toyota, one of Diamond Motor's dealerships. The insurance policy gave all drivers, including David, personal injury protection coverage up to $30,000 per accident. David had purchased no supplemental coverage of his own. Although Federated Insurance paid the entire $30,000 in personal injury protection on David's behalf, it denied Mrs. Stoms benefits for uninsured motorists coverage resulting from David's death. Mrs. Stoms sued Federated Insurance, demanding those benefits.

The parties filed cross-motions for summary judgment and the Superior Court granted Federated Insurance's motion. The plaintiff reiterates two arguments on appeal that the Superior Court rejected. The first is that the insurance policy is void as a matter of Delaware public policy because it excludes a class of drivers from its uninsured motorists coverage. But, we agree with the Superior Court that an employer may purchase such coverage for some employees and reject if for others because 18 *Del. C.*

1

§ 3902 expressly allows an insured to reject uninsured motorists coverage. Second, the plaintiff argues that the policy's reference to "directors" and "officers" is ambiguous. But, the Superior Court correctly found that when read in the context of the whole policy, "directors" and "officers" must be given their traditional corporate law meanings and cannot be reasonably read as encompassing someone who was a finance manager at one of Diamond Motor's dealerships. Therefore, we affirm the judgment of the Superior Court.

## II. BACKGROUND[1]

### A. The Accident

David Stoms was driving a Toyota Yaris home from a family outing on November 3, 2012. His daughter, Alexis, was also in the car. Near Dover, the vehicle David was driving was struck by a car belonging to an uninsured motorist, Matthew Bair. Bair was at fault for the accident, in which David was killed and Alexis was seriously injured.

At the time of the accident, David was employed as a "finance manager" by Diamond Motor, an automotive dealership in Dover.[2] This job title "conferred upon Mr. Stoms the status of a Diamond Motor employee."[3] Diamond Motor owned the Yaris David was driving. As a benefit of his employment, Diamond Motor allowed him to drive the Yaris for personal use. The company car was insured, registered, and principally garaged in Delaware.

---

[1] By filing cross-motions for summary judgment, both parties conceded that there are no disputed material facts. Thus, all facts are taken from the Superior Court's opinion, *Stoms v. Federated Serv. Ins. Co.*, 2014 WL 6673848 (Del. Super. Nov. 20, 2014).

[2] *Id.* at *1.

[3] App. to Answering Br. at 94 (Affidavit of Warren A. Price, July 11, 2014).

## B. The Insurance Policy

Diamond Motor had insurance coverage through Federated Insurance under a Commercial Package Policy (the "Policy"),[4] which covered the company car at issue at the time of the accident. The Policy includes a provision on uninsured motorists coverage entitled "Delaware Commercial Automobile Uninsured Motorists Coverage Option Form" (the "Uninsured Motorists Provision"), which provides:

> Delaware law requires that Uninsured Motorists Insurance must be provided for limits of at least equal to the State Financial Responsibility limits on every Automobile Liability Insurance Policy issued or delivered to the owner of a motor vehicle registered or principally garaged in Delaware. . . . Delaware law allows you to select higher limits up to $300,000 but not greater than the policy's liability limit, or you may REJECT this coverage.[5]

The Uninsured Motorists Provision contains several checkboxes by which the insured can select its choice for liability limits on uninsured motorists coverage. Warren Price, the President of Diamond Motor, selected the $300,000 level of uninsured motorists coverage "for directors, officers, partners or owners" of Diamond Motor and checked the "*I hereby REJECT Uninsured Motorists Insurance*" box for "*any other person who qualifies as an insured.*"[6]

---

[4] Policy Number 9361613.

[5] App. to Answering Br. at 36 (Delaware Commercial Automobile Uninsured Motorists Coverage Option Form).

[6] *Id.* (emphasis added).

The Policy also contained a $30,000 single limit on the personal injury protection or PIP coverage.[7] The parties agree that Federated Insurance paid $30,000 on David's behalf as a result of the accident.[8]

### C. Procedural History

On January 18, 2014, Mrs. Stoms filed this lawsuit against both Federated Insurance and Liberty Mutual Fire Insurance Company on behalf of herself, David's estate, and their two children, Alexis and Chad. The parties later stipulated to Liberty Mutual's dismissal. Mrs. Stoms sought special damages for wrongful death, medical expenses, pain and suffering, and David's funeral and other expenses. In its answer, Federated Insurance argued that the Uninsured Motorists Provision's language bars any claim Mrs. Stoms could have against Federated Insurance.

On May 29, 2014, Federated Insurance filed a motion for summary judgment, arguing that the Uninsured Motorists Provision was enforceable and that it did not provide any uninsured motorists coverage to David.[9] On June 30, 2014, Mrs. Stoms filed a cross-motion for summary judgment, asserting two principal arguments.[10] First, Mrs. Stoms argued that the Uninsured Motorists Provision was void as a matter of public policy. Second, she contended that it was ambiguous as to who qualified as a director or officer in that the language could be read as including all employees who managed others

---

[7] *Id.* at 72 (Letter from Jim Bookmyer to Jonathan O'Neill). The policy also covered any occupants—such as a customer taking a test drive—of a large number of vehicles owned by the named insured.

[8] Opening Br. at 5; Answering Br. at 7.

[9] *Stoms*, 2014 WL 6673848, at *2.

[10] *Id.* at *3.

and, as such, should be interpreted against Federated Insurance. Mrs. Stoms asserts these same arguments on appeal.

The Superior Court granted Federated Insurance's motion for summary judgment. It found that the Uninsured Motorists Provision was not void as contrary to public policy, reasoning that it does not seek to deny the insured the minimum coverage required by Delaware law and that Delaware law permits a company to obtain different levels of uninsured motorists coverage for different drivers.[11] Additionally, the Superior Court concluded that the Uninsured Motorists Provision was not ambiguous, and that David's position as finance manager could not reasonably be read to make him an officer or director for purposes of the policy.[12] Mrs. Stoms properly noticed her appeal to this Court on December 17, 2014.

### III.   ANALYSIS

We review the Superior Court's grant of Federated Insurance's motion for summary judgment *de novo* "to determine whether . . . there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law."[13] There were cross-motions for summary judgment below, and neither party raises a disputed issue of fact, but instead focus on the way the insurance contract should be interpreted on its face in view of the undisputed facts.

---

[11] *Id.* at *5–7.
[12] *Id.* at *10–11.
[13] *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (internal quotation marks omitted).

5

## A. An Insurance Policy That Provides Uninsured Motorists Coverage Only To Certain Classes Of Employees Is Not Contrary To Public Policy

Mrs. Stoms contends that the Superior Court erred in determining that the Uninsured Motorists Provision was valid as a matter of public policy. First, she argues that "insurance provisions designed to reduce or limit the coverage to less than that prescribed by statute are void."[14] But the Uninsured Motorists Provision does not provide less than the minimum coverage statutorily required. Section 3902 of Title 18 allows an insured to reject uninsured motorists coverage "when rejected in writing, on a form furnished by the insurer."[15] The Policy shows that Price did exactly this when obtaining insurance on Diamond Motor's behalf. Specifically, he expressly rejected uninsured motorists coverage for drivers other than "directors, officers, partners or owners" on a form provided by Federated Insurance.[16]

Second, Mrs. Stoms asserts that the Uninsured Motorists Provision violates public policy because it applies different levels of uninsured motorists coverage to different drivers. But that argument has no foundation in the governing statutes, which must be the source of public policy in this realm that is highly regulated by the Code.[17] Once an

---

[14] Opening Br. at 7 (citing *Bermel v. Liberty Mut. Fire Ins. Co.*, 56 A.3d 1062, 1067 (Del. 2012)).

[15] 18 *Del. C.* § 3902(a)(1). Additionally, the Policy provides for $30,000 in PIP coverage, which exceeds the $15,000 minimum PIP coverage prescribed under Delaware law. 21 *Del. C.* § 2118(a)(2)(b); App. to Answering Br. at 73 (Delaware Personal Injury Protection Endorsement).

[16] App. to Answering Br. at 36 (Delaware Commercial Automobile Uninsured Motorists Coverage Option Form).

[17] *See Miller v. State Farm Mut. Auto. Ins. Co.*, 993 A.2d 1049, 1055 (Del. 2010) ("Unlike no-fault insurance, underinsured motorist coverage is not compulsory, but supplemental in nature. The public policy underlying 18 *Del. C.* § 3902 is to *permit* an insured as a rational and informed

insured has purchased the statutory minimum, the insured is free as a matter of contract to procure as much or little optional insurance as it wants, and to allocate it among drivers as it chooses. Price bought optional coverage as a perquisite for some of his employees at Diamond Motor, and the coverage he purchased for the others, including David, still satisfied the statutory minimum. There is nothing improper under Delaware's insurance statutes about an employer providing higher optional levels of insurance to certain of its managers than to others.[18] To hold that any coverage above the statutory minimum— such as uninsured motorists coverage, for which no level of coverage is statutorily mandated—has to be afforded to all who benefit from a policy would dissuade employers from buying anything above the statutory minimum.[19]

## B. The Uninsured Motorists Provision Cannot Be Read To Cover Anyone In Any Management Job; It Covers Only Officers And Directors

Mrs. Stoms also argues that the Uninsured Motorists Provision's language is ambiguous as to who qualifies as an "officer" or "director." The Superior Court

---

consumer to contract for supplemental insurance protecting him from an irresponsible driver who causes death or injury.") (emphasis in original) (internal quotation marks omitted).

[18] In *Davis v. State Farm*, the Superior Court explained that "[uninsured motorist] coverage is personal to the insured" in that a driver with such coverage carries the coverage "to accidents not even involving any of the vehicles covered by the policy." *Davis v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 1379562, at *7 (Del. Super. Feb. 15, 2011). The Court noted that because such coverage is personal, a third party or guest driving the insured vehicle would not have the benefit of the insured's uninsured motorists coverage. *Id.* Thus, *Davis* permitted different levels of uninsured motorists coverage for different drivers of the same vehicle. *Id.* at *9; *see also Lukk v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 1891000, at *4–5 (Del. Super. Mar. 31, 2014) (concluding that primary residence requirement, which limited the policy's uninsured motorists coverage to drivers residing in the insured's home, was valid because it did not reduce coverage below the statutory minimums and because a restriction on uninsured motorists coverage to a limited class of drivers does not violate public policy).

[19] As Federated Insurance's underwriter stated, obtaining the same level of uninsured motorists coverage for all drivers would have increased the premiums from $816 to $12,759 annually. App. to Answering Br. at 97–98 (Affidavit of Daniel Powers).

concluded that these terms, when read in the context of the whole Policy, were unambiguous. Mrs. Stoms cites *Lukk v. State Farm Mutual Auto Insurance Co.* for the proposition that insurance terms must be given their dictionary definition and then cites *Black's Law Dictionary*'s definitions of "officer" and "director."[20] She asserts that David arguably qualified for the $300,000 uninsured motorists coverage because he had managerial duties as a finance manager for the Price Toyota dealership owned by Diamond Motor and thus was an officer or director under a reasonable interpretation of the Uninsured Motorists Provision.

This Court has explained that "an insurance contract is ambiguous when it is 'reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'"[21] "An insurance contract is not ambiguous simply because the parties do not agree on its proper construction."[22] Rather, the language at issue must be read in the context of the policy.[23] If a provision is unambiguous, we "will not destroy or twist policy language under the guise of construing it."[24]

---

[20] *See* Opening Br. at 19 ("In addition, the court in *Lukk* stated that in determining the common meaning of insurance terms, courts have examined and adopted dictionary definitions. . . . The decedent was in a managerial position at the time of the crash. Black's law dictionary defines an officer as: Person holding office of trust, authority or command in public affairs, government or a corporation. . . . Director is defined as: One who manages, guides, or orders; a chief administ[rator].") (internal citations omitted).

[21] *ConAgra Foods, Inc. v. Lexington Ins. Co.*, 21 A.3d 62, 69 (Del. 2011) (quoting *Phillips Home Builders, Inc. v. Travelers Ins. Co.*, 700 A.2d 127, 129 (Del. 1997)).

[22] *Id.* (citing *Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057, 1062 (Del. 2010)) (internal quotation marks omitted).

[23] *See O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 287 (Del. 2001) ("[A] court's interpretation of an insurance contract must rely on a reading of all of the pertinent provisions of the policy as a whole, and not on any single passage in isolation."); *Aenta Cas. & Sur. Co. v. Kenner*, 570 A.2d 1172, 1174 (Del. 1990), *overruled on other grounds by Hurst v. Nationwide*

8

The Superior Court correctly determined that the Uninsured Motorists Provision is unambiguous. When read in the context of the Policy, it is clear that "director" and "officer" refer to those terms as used in corporate law. First, the Policy is in the name of Diamond Motor, a corporation. In fact, "Diamond Motor Sports, Inc." even appears at the top of the very form on which the Uninsured Motorists Provision appears.[25] Second, the form is titled the "Delaware Commercial Automobile Uninsured Motorists Coverage Options Form," which indicates that it is intended for business entities. Third, the $300,000 uninsured motorists coverage applies to "directors, officers, partners or owners . . . of the *named insured*," which in the case of a corporation like Diamond Motor can be interpreted only as referring to its directors and officers.[26] These include members of a corporation's board of directors[27] and individuals with titles and duties

*Mut. Ins. Co.*, 652 A.2d 10 (Del. 1995) ("Moreover, we must examine all relevant portions of the policy, rather than reading a single passage in isolation.").

[24] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).

[25] App. to Answering Br. at 36 (Delaware Commercial Automobile Uninsured Motorists Coverage Option Form).

[26] *Id.* (emphasis added); *see also United Fire & Cas. Ins. Co. v. Thompson*, 758 F.3d 959, 962–63 (8th Cir. 2014) ("Thompson argues that 'director' as used in the insurance policy is ambiguous, and that Rockett is an insured 'director' because he often 'directed' people and processes as part of his job. . . . We conclude that when looking at [the provision] in the context of the surrounding provisions, coverage is provided only for members of Rose Concrete's board of directors. . . . Thus, when analyzing the term 'directors' within the context of the United Fire policy as a whole, the policy unambiguously insures only members of Rose Concrete's board of directors, rather than all employees who may 'direct' some aspect of, or an activity at, the company.").

[27] 8 *Del. C.* § 141(a); *see also* FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, THE DELAWARE LAW OF CORPORATIONS & BUSINESS ORGANIZATIONS § 4.2, at 4-7 (3d ed. 2015) (explaining that directors are those serving on the corporation's board of directors with positions provided for in the bylaws); EDWARD P. WELCH ET AL., FOLK ON THE DELAWARE GENERAL CORPORATION LAW § 141.01[A][B], at 4-19 (6th ed. 2015) (observing "the general statutory requirement that corporate affairs be managed by an *elected* board of directors") (emphasis added).

established in the corporation's bylaws.[28] David was not a director or officer of Diamond Motor within these corporate law definitions.[29] Nor, as a finance manager at Price Toyota, one of Diamond Motor's dealerships, did he have even a looser officer appellation, sometimes given out by corporations to managers, such as Vice President, even when not established in the bylaws.

To this point, we acknowledge that Mrs. Stoms cites to the "reasonable expectation doctrine" and argues that this Court must read the Uninsured Motorists Provision using "the reasonable expectations of the insured."[30] But that doctrine applies only after a determination that an insurance contract is ambiguous.[31] Because there is no plausible way that the contract terms officer or director can be said to encompass a finance manager, the contract language is not ambiguous in a manner that could have led

---

[28] 8 *Del. C.* § 142(a); *see also* BALOTTI & FINKELSTEIN, § 4.10[C], at 4-37 (explaining that officers are those "to whom the primary functions of management are delegated" and whose offices are "prescribed in the by-laws" or "set forth in a resolution of the board").

[29] The use of terms like "owners" and "partners" in an insurance contract, which would apply to those with the managerial power of corporate directors in the case of entities like sole proprietorships or partnerships, also suggests that the only reasonable reading of the contract is referring to how the terms officers and directors are used in corporate law.

[30] Opening Br. at 20.

[31] *See Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 927–28 (Del. 1982) ("With all due deference, we decline to extend the reasonable expectations doctrine as far as it has been taken in some other jurisdictions . . . .  Therefore, we hold that the doctrine of reasonable expectations is applicable in Delaware to a policy of insurance only if the terms thereof are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall, or if the fine print purports to take away what is written in large print."); *see also Bermel*, 56 A.3d at 1071 ("A determination that the Liberty Policy was ambiguous would require this Court to undertake a 'reasonable expectations' analysis, under which Bermel could not prevail . . . ."); *Cont'l Ins. Co. v. Burr*, 706 A.2d 499, 500–01 (Del. 1998) ("Because an insurance policy is a contract of adhesion, however, ambiguous language . . . will be read in a way that satisfies the reasonable expectations of the average consumer.").

David to have any reasonable expectation that he would get the same coverage as officers and directors.

For the foregoing reasons, the judgment of the Superior Court is affirmed.

11