**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 13, 2018**

# In the Court of Appeals of Georgia

A18A0039. JONES v. FEDERATED MUTUAL INSURANCE COMPANY.

BARNES, Presiding Judge.

Verlinda and Kevin Jones appeal the summary judgment entered against them and in favor of Federated Mutual Insurance Company. They contest the trial court's ruling that they were validly excluded from uninsured motorist coverage provided by a policy issued by that company. For reasons that follow, we affirm.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all

reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

So viewed, the record shows the following. On April 3, 2015, the Joneses were test-driving a car owned by Five Star Automotive Group, when that car was rear-ended by a vehicle being driven by Rashod Lamar. Neither of the Joneses had a personal automobile insurance policy. Seeking to recover damages for alleged injuries from the car wreck, the Joneses filed the instant action. They named Lamar as a defendant, and they served a copy of the action upon Federated Mutual, with which Five Star had an insurance policy ("Policy") at the time of the collision.[1] The Joneses accepted the liability limits from Lamar's insurer and executed a limited liability release pursuant to OCGA § 33-24-41.1,[2] thereby exhausting all liability coverage.[3]

----

[1] See OCGA § 33-7-11 (d).

[2] See generally *Daniels v. Johnson*, 270 Ga. 289, 290 (2) (509 SE2d 41) (1998) ("The legislature enacted OCGA § 33-24-41.1 . . . to make meaningful the ability of a claimant to settle with the tortfeasor's insurance carrier while preserving his [uninsured motorist] claim.").

[3] See id. at 291 (2) (holding that "if the plaintiff settles for the limits of the [tortfeasor's] policy as stated in the policy and executes a limited release in accordance with OCGA § 33-24-41.1, the plaintiff may pursue his [uninsured motorist] claim.")

Maintaining, however, that their medical bills stemming from the car wreck exceeded the amounts received from Lamar's insurer, the Joneses sought uninsured motorist coverage under the Policy pursuant to OCGA § 33-7-11, the Georgia Uninsured Motorist Act ("UM Statute").[4]

Federated Mutual moved for summary judgment, asserting that the Policy afforded the Joneses no uninsured motorist coverage. In support of its motion, Federal Mutual presented evidence that when Five Star procured the Policy and thus decided the scope of coverage it would obtain, Five Star's authorized representative executed a "Georgia Commercial Automobile Uninsured Motorists Coverage Option Form" (the "Uninsured Motorist Provision") selecting thereon a $1,000,000 uninsured motorist coverage limit for "directors, officers, partners or owners of the named insured and family members who qualify as an insured." On that same form, as Federated Mutual further pointed out, Five Star's authorized representative expressly *rejected* uninsured motorist coverage for "any other person who qualifies as an insured." At the time of the collision, as the Joneses stipulated, neither of them was

---

[4] See *FCCI Ins. Co. v. McLendon Enterprises*, 297 Ga. 136, 137, n. 2 (772 SE2d 651) ("If the [tortfeasor] motorist is uninsured or underinsured, the statutory characterization is that of 'uninsured.'"), citing OCGA § 33-7-11 (b) (1) (D) (ii).

a director, officer, owner, or partner of Five Star, nor was either a family member of any Five Star director, officer, owner, or partner.

Notwithstanding, the Joneses opposed Federated Mutual's motion on grounds that the Uninsured Motorist Provision – which resulted in "tiered" uninsured motorist coverage (for different groups of individuals) – was void as contravening both the plain language of the UM Statute and Georgia's public policy. Therefore, the Joneses urged that the $1,000,000 option applied to them each as an "insured" in accordance with the UM Statute.

After a hearing, the trial court ruled in favor of Federated Mutual. It ascertained that the plain terms of the Uninsured Motorist Provision revealed the contracting parties' intent to exclude uninsured motorist coverage for persons such as the Joneses. And in rejecting the Joneses' arguments that the Uninsured Motorist Provision was void, the trial court relied on *Crouch v. Federated Mut. Ins. Co.*, 257 Ga. App. 604 (571 SE2d 574) (2002), which upheld tiered uninsured motorist coverage (for different groups of individuals) as contravening neither law nor public policy. Id. at 606 (a). The trial court granted Federated Mutual's summary judgment motion, and the Joneses appeal.

4

1. We first review the applicable statutory and contractual framework. "In Georgia, an insurer may fix the terms of its policy as it wishes, insuring against certain risks and excluding others, provided the terms are not contrary to law." *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996).

> When an uninsured motorist policy provision is in conflict with the clear intent of OCGA § 33-7-11, the policy provision is unenforceable and the statute controls. Exclusions in uninsured motorist endorsements cannot circumvent the clear mandate of the [UM Statute] by withholding the protection required.

(Citations and punctuation omitted.) *Dees v. Logan*, 282 Ga. 815, 816 (653 SE2d 735) (2007); see *Hartford Accident & Indem. Co. v. Booker*, 140 Ga. App. 3, 4 (1) (230 SE2d 70) (1976).

In relevant part, the UM Statute states in paragraph (a) (1), "No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state . . . unless it contains an endorsement or provisions undertaking to pay the insured damages for bodily injury . . . sustained from the owner or operator of an uninsured motor vehicle. . . ." But paragraph (a) (3) of the UM Statute states, "The coverage required under paragraph (1) of this subsection shall not be applicable where any insured named in the policy shall reject the coverage in writing." Together,

5

these paragraphs provide that uninsured motorist "coverage must appear in every [automobile liability] policy unless rejected in writing by the insured named in the policy." *Doe v. Rampley*, 256 Ga. 575, 577 (1) (351 SE2d 205) (1987); see also *Jones v. Ga. Farm Bureau Mutual Ins. Co.*, 248 Ga. App. 394, 396 (546 SE2d 791) (2001) ("Although an insurer is required to offer [uninsured motorist] coverage initially, a insured is not required by the statute to carry [uninsured motorist] coverage.").

We thus turn to the Policy because "[courts] must employ the standard rules of contract construction to determine the meaning of the provisions of an insurance policy." *Owners Ins. Co. v. Smith Mechanical Contractors*, 285 Ga. 807, 808 (2) (683 SE2d 599) (2009). In this case, the named insured was Five Star. Where, as here, "the terms and conditions of an insurance contract are clear and unambiguous, they must be given their literal meaning." *Adams v. Atlanta Cas. Co.*, 235 Ga. App. 288, 289 (1) (509 SE2d 66) (1998); see *Smith v. Stoddard*, 294 Ga. App. 679, 682 (1) (b) (669 SE2d 712) (2008) ("Under Georgia law, contracts of insurance are interpreted by ordinary rules of contract construction. Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent.") (citation and punctuation omitted).

Accordingly, the trial court correctly ascertained that the plain terms of the Uninsured Motorist Provision revealed that the contracting parties intended to exclude uninsured motorist coverage for persons such as the Joneses. See *Crouch*, 257 Ga. App. at 607-608 (c) (rejecting injured motorist's claim of entitlement to pursue maximum amount of uninsured motorist coverage provided by a tiered policy, where the language of the policy plainly excluded the motorist from that option). Even the Joneses acknowledge in their appellate brief that, in executing the Uninsured Motorist Provision, "Five Star chose to provide significant protection to its own owners and directors [and other designated individuals,] while totally excluding all others who would obviously[5] be using the vehicles."

2. In an effort to escape the summary judgment ruling and to establish that the $1,000,000 option of uninsured motorist coverage applies to them, the Joneses reassert on appeal that the Uninsured Motorist Provision is void as contravening: (a) the UM Statute; and (b) Georgia's public policy. See generally *Merrill v. Lee*, 301 Ga. 34, 36 (2) (799 SE2d 169) ( 2017) ("Parties may establish contract terms on any

_____

[5] The Joneses included the word "obviously," as the Joneses explain in their brief, because "Five Star sells cars and routinely allows the public to test drive its vehicles."

7

subject matter in which they have an interest so long as their agreement is not prohibited by statute or public policy.") (citation and punctuation omitted).

(a) Contending that the Uninsured Motorist Provision runs afoul of Georgia's UM Statute, the Joneses present the following two arguments.

(i) First, the Joneses emphasize that the UM Statute sets forth a definition of "insured" that includes "any person who uses, with the expressed or implied consent of the named insured, the motor vehicle to which the policy applies." OCGA § 33-7-11 (b) (1) (B). Maintaining that they fell within that definition, the Joneses argue that the grant of summary judgment to Federated Mutual impermissibly disregarded that statutory definition.

This contention lacks merit because, as explained above, paragraph (a) (3) of the UM Statute expressly authorizes named insureds – such as Five Star in the instant case – to reject in writing the uninsured motorist coverage required by that statute's paragraph (a) (1). See OCGA § 33-7-11 (a) (1, 3); *Nat. Union Fire Ins. Co. v. Johnson*, 183 Ga. App. 38, 39 (357 SE2d 859) (1987) (explaining that claim by employee for uninsured motorist coverage under the employer's automobile liability policy was properly rejected, where the employer as the "named insured" had rejected in writing uninsured motorist coverage pursuant to OCGA § 33-7-11 (a) (3)); see also

8

*Nolley v. Md. Casualty Ins. Co*., 222 Ga. App. 901, 903 (3) (476 SE2d 622) (1996) (determining that, because a garage was not required by law to carry uninsured/underinsured motorist insurance, then it could not be required to offer such insurance to a customer using a loaner vehicle).

Although the Joneses have cited us to *State Farm Mutual Auto Ins. Co. v. Murphy*, 226 Ga. 710 (177 SE2d 257) (1970), that case is inapposite. Although *Murphy* concluded that a policy provision excluding uninsured motorist coverage was void as contrary to the UM Statute, id. at 713-714, that case did not concern a named insured's written rejection of uninsured motorist coverage. Id. at 710-713. Accord *Doe*, 256 Ga. at 577 (1) (determining that a policy provision excluding uninsured motorist coverage was ineffective as contrary to the UM Statute, where it was not "saved by the force of OCGA § 33-7-11 (a) (3) allowing the insured to waive uninsured motorist coverage," because the record contained no written waiver of uninsured motorist coverage, and because "the acceptance of a policy with a non-confirming uninsured motorist provision is not such a waiver as the statute contemplates").

(ii) The Joneses' second attack upon the Uninsured Motorist Provision as ruling afoul of the UM Statute asserts that the UM Statute allows a named insured

9

*either* "to choose an amount of uninsured motorist coverage *or* to reject uninsured motorist coverage in its entirety[,] but *not* to do both." (Emphasis supplied.)

The Joneses have pointed to no language within the UM Statute as imposing an "all or nothing" restriction upon uninsured motorist coverage; and we find none. Had the legislature intended for a rejection of uninsured motorist coverage as to any *one* statutorily-defined "insured" to apply to *all other* statutorily-defined "insureds," it could have said so; but it did not. See *Jones*, 248 Ga. App. at 396-397 (rejecting claimant's contention that she remained eligible for "excess" uninsured motorist coverage because she had not rejected it in writing, reasoning that the UM Statute, "on its face, does not require an insurer to obtain a written rejection of excess coverage," and that "[i]f the legislature meant for the rejection feature to apply equally to . . . excess coverage, it would have said so explicitly"); *Nat. Union Fire Ins. Co.*, 183 Ga. App. at 39 ("If the legislature had intended any further formal requisites for the rejection of uninsured motorist benefits, we must presume it would have specified them."). And because "[t]here is nothing in [the statute] imposing such a requirement, . . . we will not judicially legislate one." *Kight v. MCG Health*, 296 Ga. 687, 689 (1) (769 SE2d 923) (2015); see *Abdulkadir v. State*, 279 Ga. 122, 124 (2)

(610 SE2d 50) (2005) ("A court of law is not authorized to rewrite the statute by inserting additional language that would expand its application.").

Indeed, the trial court correctly determined that this issue is controlled by the analogous case of *Crouch*, 257 Ga. App. at 604, which upheld the named insured's freedom of contract to choose tiered uninsured motorist coverage. Id. at 605-606 (a). In *Crouch*, an individual was driving a car belonging to an automobile dealership when the car collided with another vehicle. 257 Ga. App. at 604. The individual sought uninsured motorist benefits under the dealership's automobile liability policy, which split uninsured motorist coverage into two options. Id. One option capped such coverage at $1,000,000 for "directors, officers, partners, or owners" of the dealership and included in such limit a "family member" who qualified as an insured; the other option capped uninsured motorist coverage at $40,000 for "any other person qualifying as an 'insured.'" Id. The individual seeking uninsured motorists benefits was not a director, officer, partner, owner of the dealership, nor a family member of any such person.

Notwithstanding, the individual attempted to establish that the $1,000,000 option of uninsured motorist coverage applied to her, arguing that "the two options of UM coverage contained in the Federated policy are not permitted under Georgia

11

law." *Crouch*, 257 Ga. App. at 605 (a). Rejecting that argument, this Court espoused, "As long as the mandatory UM minimum is met and optional UM coverage is offered pursuant to statutory requirements, a combination of sublimits and interests restricted to named insureds and resident relatives contravenes neither the law nor public policy." Id. at 606 (a). Thus ruling in favor of the insurance company, we reiterated: "[I]nsurance policies are not excepted from the general principle of freedom of contract. An insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others." Id. at 605 (a).

The Joneses point out that the insurance policy underlying *Crouch* allotted each group at least some amount of coverage. But that distinction does not lead to an outcome in their favor. Material here is that, in both *Crouch* and the instant case, the tiered options chosen by the named insureds were expressly permitted by the UM Statute.

Notably, other jurisdictions with uninsured motorist statutory provisions similar to the UM Statute's provisions at issue here have upheld tiered uninsured motorist coverage in accordance with the named insureds' elections. See, e.g., *Vaughn*, 961 So2d at 819-820 (II) (A) (rejecting argument that a named insured's

12

decision to accept UM coverage for some insureds prevented it from rejecting UM coverage for other insureds, where the governing statute allowed the named insured to reject uninsured motorist coverage totally, and where "nothing in the text of [the governing statute] prevented [a named insured] from rejecting UM coverage for [one category of insureds] while accepting UM coverage for other insureds); *Stoms v. Federated Svcs. Ins. Co.*, 125 A3d 1102, 1107-1108 (III) (B) (Del. 2015) (upholding as unambiguous a car dealership's insurance policy that provided uninsured motorist coverage only "for directors, officers, partners or owners" of the dealership, where the dealership had complied with the governing statute authorizing it to "reject[] in writing, on a form furnished by the insurer" uninsured motorist coverage for "any other person who qualifies as an insured").

(b) Finally, the Joneses contend that the two options of uninsured motorist coverage contained in the Uninsured Motorist Provision raise "a significant public policy concern." Asserting that the UM Statute "does not discriminate against a driver who is not financially or familiarly connected to the named insured," the Joneses claim that the $1,000,000 option should be afforded to them also.

"[T]he legislature . . . is empowered by the Constitution to decide public policy, and to implement that policy by enacting laws." *Commonwealth Investment Co. v.*

13

*Frye*, 219 Ga. 498, 499 ( ) (134 SE2d 39) (1963), cited in *Woodcraft by MacDonald, Inc. v. Ga. Cas. & Sur. Co.*, 293 Ga. 9, 11-12 (743 SE2d 373) (2013); *Crowder v. Dept. of State Parks*, 228 Ga. 436, 440 (3) (185 SE2d 908) (1971) ("[P]ublic policy . . . addresses itself to the legislative, not the judicial, branch of our State government."). And as our Supreme Court has long held, "[t]he power of the courts to declare a contract [provision] void for being in contravention of a sound public policy is a very delicate and undefined power, and . . . should be exercised only in cases free from doubt." *Cotton State Mutual Ins. Co. v. Neese*, 254 Ga. 335, 337 (1), n. 4 (329 SE2d 136) (1985), quoting *Equitably Loan &c. Co. v. Waring*, 117 Ga. 599, 599 (1) (44 SE 320) (1903).

The Joneses have not specified which public policy they claim is violated; nor have they demonstrated that their generalized public policy contention is free from doubt. Here, each option selected on the Uninsured Motorist Provision – (i) one selecting "excess" uninsured motorist coverage; and (ii) the other rejecting uninsured motorist coverage – is expressly authorized by the UM Statute. OCGA § 33-7-11 (a) (1, 3). And "[t]he legislative enactment of a statute is a conclusive expression of public policy." *Villanueva v. First American Title Ins. Co.*, 292 Ga. 630, 632 (740 SE2d 108) (2013). Accord *Fountain*, 204 Ga. App. at 167 (3) (rejecting contention

14

that the exclusion of uninsured motorist coverage for named driver violated public policy).

More pointedly, it is clear that the Joneses take issue specifically with Five Star's *rejection* of uninsured motorist coverage. But named insureds may reject in writing uninsured motorist coverage. OCGA § 33-7-11 (a) (3). As this Court has discerned, "[a]s a matter of public policy, [a] written rejection is required: (1) to be certain that insurers notify insureds about the UM coverage available to them and (2) to encourage, without requiring, drivers to elect to carry the minimum amount of UM coverage." (Emphasis omitted.) *Jones*, 248 Ga. App. at 397. We are satisfied that these interests were served in the instant case.

Other jurisdictions with comparable uninsured motorist statutory provisions have rejected similar pubic policy challenges to tiered uninsured motorist coverage. See, e.g., *Vaughn*, 961 So2d at 819-820 (II) (A) (rejecting argument that *public policy* is violated by employer's insurance policy that provided uninsured motorist coverage only to certain categories of employees, because "[t]he language of [the governing statute] does not support, let alone require, this interpretation," and because "the greater typically includes the lesser, the right to reject totally UM coverage implies the right to reject it partially"); *Stoms*, 125 A3d at 1106 (III) (rejecting *public policy*

15

challenge to an employer's insurance policy that provided uninsured motorist coverage only to certain categories of employees, because "[t]o hold that any coverage above the statutory minimum . . . has to be afforded to all who benefit from a policy would dissuade employers from buying anything above the statutory minimum").

We are mindful that the UM Statute "resulted from public concern over increasingly frequent hardships imposed upon persons sustaining bodily and property damage caused by uninsured and financially irresponsible motorists." *Murphy*, 226 Ga. at 712. But for all the foregoing reasons, the Joneses have established no error in the trial court's ruling that they were validly excluded from uninsured motorist coverage afforded under the Policy. Consequently, they have supplied us with no basis for reversing the grant of summary judgment entered in favor of Federated Mutual. See generally *Travelers Home & Marine Ins. Co. v. Castellanos*, 297 Ga. 174, 176 (1) (773 SE2d 184) (2015) (reiterating that an individual "claiming an insurance benefit has the burden of proving that a claim falls within the coverage of the policy," and "[t]hus, to establish a prima facie case on a claim under a policy of insurance [that individual] must show the occurrence was within the risk insured against") (citation and punctuation omitted); *Lambert v. Alfa Gen. Ins. Corp.*, 291 Ga.

16

App. 57 (660 SE2d 889) (2008) (affirming the grant of summary judgment to insurer on issue of amount of uninsured motorist coverage, where no ambiguity in the insurance contract existed, and where the insurer was statutorily permitted to abide by the policyholder's written directives pertaining to the amount of such coverage afforded).

*Judgment affirmed. McMillian and Reese, JJ., concur.*