OSCN Found Document:ANAYA-SMITH v. FEDERATED MUTUAL INSURANCE CO.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 ANAYA-SMITH v. FEDERATED MUTUAL INSURANCE CO.
2024 OK 34
Case Number: 120403
Decided: 05/14/2024
As Corrected: May 17, 2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 34, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

NANCY ANAYA-SMITH, Next of kin of Michael Brian Smith, deceased, Plaintiff/Appellant,
v.
FEDERATED MUTUAL INSURANCE COMPANY, Defendant/Appellee.

CERTIFIED QUESTIONS FROM THE UNITED STATES
COURT OF APPEALS FOR THE TENTH CIRCUIT

¶0 The United States Court of Appeals for the Tenth Circuit certified three questions of state law to this Court pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S.2011, §§ 1601-1611.

CERTIFIED QUESTIONS ANSWERED IN PART.

Rex Travis, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Bart J. Robey, Chubbuck, Duncan & Robey, Oklahoma City, Oklahoma, and Thomas H. Crouch, Meagher & Greer, Scottsdale, Arizona, for Defendant/Appellee.

PER CURIAM:

¶1 The United States Court of Appeals for the Tenth Circuit certified to this Court three questions of law:

1. Where Mr. Smith was injured and killed as a passenger in an employer-owned vehicle that had $7,000,000 of liability insurance and has not shown the claim would exceed $7,000,000, but where Mr. Smith cannot recover under the policy because the worker's compensation exclusive remedy provision of 85A O.S. § 5, bars suit against the employer, does that vehicle qualify as an uninsured motor vehicle within the meaning of 36 O.S. § 3636(C)?

2. Does 36 O.S. § 3636 permit FADCO, a corporate named insured, to purchase uninsured motorist coverage for its directors, officers, partners, owners, and their family members who qualify as insureds, but to reject uninsured motorist coverage for other persons who qualify as insureds?

3. If FADCO's insurance policy with Federated violates 36 O.S. § 3636, does the legislative intent or purpose of § 3636 impute the $1,000,000 uninsured motorist coverage policy limit FADCO purchased for its directors, officers, partners, owners, and their family members who qualify as insureds or [does] the $25,000 per person/$50,000 per accident minimum uninsured motorist coverage policy limit in § 3636 [apply] to the other persons who qualify as insureds?

¶2 We answer the first question in the affirmative. Where Decedent was injured and killed as a passenger in an employer-owned vehicle with $7,000,000 of liability insurance and no proof was submitted to show the claim would exceed $7,000,000, but where Decedent cannot recover under the policy because the workers' compensation exclusive remedy provision of 85A O.S.Supp.2019, § 5 bars suit against the employer, the vehicle qualifies as an uninsured motor vehicle within the meaning of 36 O.S.Supp.2014, § 3636(C).

¶3 We answer the second question in the negative and conclude that the plain language of 36 O.S.Supp.2014, § 3636(G) requires a named insured to either elect or reject uninsured/underinsured (UM) coverage for all insureds under the policy, treating every insured in the same manner.

¶4 Finally, because the record is undeveloped and the parties did not submit legal arguments pertaining to the third certified question, we decline to answer it for the first time.

I. CERTIFIED FACTS AND PROCEDURAL HISTORY

¶5 The federal court's certification order sets out the facts of this case. When answering a certified question, this Court will not presume facts outside those presented in the certification order. See Hamilton v. Northfield Ins. Co., 2020 OK 28, ¶ 4, 473 P.3d 22, 25. Our examination is confined to resolving legal issues. Id.

¶6 On March 24, 2020, Michael Brian Smith ("Smith") was killed in a single-car accident that occurred while he was a passenger in a company vehicle owned by Fixtures & Drywall Company of Oklahoma ("FADCO"). At the time of the accident, the FADCO vehicle was being driven by Decedent's coworker, Duane Clark. Plaintiff/Appellant Nancy Anaya-Smith ("Anaya-Smith"), as next of kin of Smith (the "deceased"), contends the co-employee's negligence caused the fatal accident.

¶7 At the time of the accident, FADCO maintained an insurance policy with Federated Mutual Insurance Company ("Federated"). The insurance policy identified FADCO as the named insured and extended liability coverage to "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from the ownership maintenance, or use of a covered auto."[1] The policy provided up to $1,000,000 of liability coverage per accident. FADCO also obtained an umbrella policy (Federated Policy No. 9840993), furnishing an additional $6,000,000 of liability coverage per accident -- for a total of $7,000,000 in liability coverage. These liability limits covered an "insured," which includes FADCO and "anyone else while using with [FADCO's] permission a covered 'auto' [FADCO] own[s], hire[s], or borrow[s]."[2] The policies exclude "[a]ny obligation for which the 'insured's' insurer may be held liable under any workers' compensation disability benefits."[3] Both parties agree that the vehicle involved in the fatal accident was a covered auto and the driver was an insured for liability purposes.

¶8 In addition to liability coverage, Federated offered FADCO the option of purchasing uninsured motorist (UM) insurance coverage by using an election form identical to the one required by 36 O.S.Supp.2014, § 3636(H). This form was identified as F80-104 PT.2 (OK-CA) (04-05) (Form 1). On February 28, 2018, a FADCO representative executed Form 1, rejecting UM coverage for all employees. Federated also provided FADCO with a separate document pertaining to the rejection/acceptance of UM benefits. This form deviated extensively from the format outlined in § 3636(H) and was identified as F80-104 PT.1 (OK-C.A.) (04-05) (Form 2). Form 2, which appears to be a substantially modified version of the statutorily required form, included two columns--one column representing UM coverage for directors, officer, partners or owners, and their family members, and a second column for any other person who qualified as an insured. FADCO elected to purchase UM coverage up to $1,000,000 for the directors, officers, partners, or owners of and their family members who qualify as insureds; however, FADCO rejected UM coverage for all other insureds:[4]

Based on the selections made in Form 2, an endorsement providing UM coverage for FADCO directors, officers, partners, or owners, and their family members who qualify as insureds was added to Policy No. 9840992.

¶9 Because Smith was in the course and scope of his employment and traveling in an employer-owned vehicle at the time of the accident, the exclusive remedy provision of the Oklahoma Workers' Compensation Act applied. Thus, Anaya-Smith was prohibited from suing FADCO or recovering damages under FADCO's commercial and umbrella policies. See 85A O.S.Supp.2019, § 5. Instead, Anaya-Smith sought recovery of UM benefits under FADCO's commercial policy. Federated denied the UM claim because Smith was not a director, officer, partner, owner or qualifying member of FADCO at the time of the accident.

¶10 After her claim was disallowed, Anaya-Smith filed suit against Federated in the United States District Court for the Western District of Oklahoma. In her Complaint, Anaya-Smith alleged that Federated denied her UM claim in bad faith and that its UM coverage scheme contravened Oklahoma law and public policy. Federated denied these claims and brought a counterclaim for declaratory judgment. Federated asked the federal district court to determine that FADCO's insurance policy does not provide UM coverage to Smith because (1) the vehicle was not an uninsured vehicle at the time of the accident because the driver qualified as an insured for liability coverage and (2) FADCO's rejection of UM coverage for some insureds and not for others was valid and did not violate 36 O.S.Supp.2014, § 3636. In the alternative, Federated claimed that if 36 O.S.Supp.2014, § 3636 requires a named insured to purchase/reject UM coverage uniformly for all insureds under a policy, UM coverage should be imputed at the minimum of $25,000 per person and $50,000 per occurrence in the statute, rather than the $1,000,000 amount under Federated Policy No. 9840992.

¶11 The parties each filed competing cross-motions for summary adjudication. Anaya-Smith sought partial summary judgment on the coverage issue. Federated also moved for summary judgment on the coverage issue, the bad faith claim, and its request for declaratory judgment. The district court granted summary judgment in favor of Federated and denied Anaya-Smith's motion. Specifically, the district court concluded: (1) the subject automobile was an uninsured vehicle at the time of the accident because Clark is immune from tort liability and (2) FADCO's policy providing UM coverage for some individuals who qualify as insureds but rejecting UM coverage for other insureds does not violate 36 O.S.Supp.2014, § 3636. Anaya-Smith appealed from the summary judgment order.[5] The Tenth Circuit certified the above-referenced questions to this Court.

II. REQUIREMENTS FOR ANSWERING CERTIFIED QUESTIONS

¶12 This Court has the discretionary power to answer certified questions of law if presented in accordance with the provisions of the Revised Uniform Certification of Questions of Law Act, 20 O.S.2011, §§ 1601-1611. When assessing whether we should answer a federal certified question of law, we address both factors mentioned in § 1602: (1) would the answer be dispositive of an issue in pending litigation in the certifying court; and (2) is there established and controlling law on the subject matter? See Siloam Springs Hotel, LLC v. Century Sur. Co., 2017 OK 14, ¶ 14, 392 P.3d 262, 266. Answers to the first two certified questions would be determinative of issues in the underlying suit and present issues of first impression for which there is no controlling Oklahoma precedent. However, because the issue(s) relating to the amount which would be payable under the policy was not decided in the district court and was not briefed by the parties in the Tenth Circuit appeal, we decline to address the third question.

III. FIRST CERTIFIED QUESTION

Where Mr. Smith was injured and killed as a passenger in an employer-owned vehicle that had $7,000,000 of liability insurance and has not shown the claim would exceed $7,000,000, but where Mr. Smith cannot recover under the policy because the workers' compensation exclusive remedy provision of 85A O.S. § 5 bars suit against the employer, does that vehicle qualify as an uninsured motor vehicle within the meaning of 36 O.S. § 3636(C)?

¶13 The federal court's first certified question asks us to decide whether the FADCO-owned vehicle involved in this accident was an "uninsured motor vehicle" within the meaning of 36 O.S.Supp.2014, § 3636(C). It is undisputed that the driver and the Decedent were in the course and scope of their employment when the single-car accident occurred. Thus, Decedent may not recover against his employer under the Federated liability policy because of the workers' compensation exclusive remedy provision of 85A O.S.Supp.2019, § 5.

¶14 Federated maintains the automobile involved in the accident is not an uninsured/underinsured motor vehicle because Federated provided up to $7,000,000 of liability coverage and Anaya-Smith has not shown the claim would exceed the liability coverage provided. However, Anaya-Smith's argument is not premised on the amount of liability coverage provided by Federated--instead she maintains, the Oklahoma Workers' Compensation Act (OWCA), 85A O.S.Supp.2019, § 5, precludes her from recovering any of the insurance proceeds against the employer or the driver.[6] Therefore, because there is no ability to collect against the liability insurance proceeds, Anaya-Smith argues the subject vehicle falls within the definition of "uninsured motor vehicle."

¶15 Because uninsured motorist coverage is an important part of automobile insurance coverage, an entire section of the Oklahoma Insurance Code is dedicated to defining the coverage and providing protections for policyholders. For coverage purposes 36 O.S.Supp.2014, § 3636(C) defines the phrase uninsured motor vehicle as follows:

[T]he term "uninsured motor vehicle" shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency. For the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other.

Because FADCO's liability policy is not accessible as a source for recovery, it logically follows that limits are less than the amount of Anaya-Smith's claim.

¶16 We have previously addressed the interplay between the exclusive remedy provision of OWCA and uninsured motorist (UM) coverage. First, in Barfield v. Barfield, 1987 OK 72, 742 P.2d 1107, we addressed a similar scenario to the case currently before us. Therein, two co-workers were involved in a fatal single motor-vehicle accident while in the course and scope of their employment. Id. ¶ 1, at 1109. The surviving spouses of both co-workers sought and received workers' compensation benefits from their employer as provided by the Oklahoma Workers' Compensation Act. Id. ¶ 3, at 1109. The widow of the passenger-employee in the accident filed a wrongful death action in the district court against the estate of the driver-employee and Kansas City Fire & Marine Insurance Company. Id. ¶ 4, at 1109.The passenger-employee was insured by a policy with Kansas City Fire & Marine which provided UM coverage. Id. The insurance company in Barfield argued the widow was not legally entitled to recover UM benefits because she had already recovered her exclusive remedy under the Workers' Compensation Act. Id. ¶ 11, at 1110-11. Although, we affirmed dismissal of a direct cause of action against the driver-employee for negligence, we clearly acknowledged the right of the employee-passenger's surviving spouse to recover UM benefits under the subject policy:

[E]mployer-employee tort immunity under the Workers' Compensation Act does not preclude recovery under one's own contract of insurance with an insurance carrier unrelated to the employer-employee relationship. The Oklahoma State Legislature has clearly manifested an intent that a worker who takes steps to assure his financial security shall not be penalized. . . .[7] Protection under an uninsured motorist policy is a contractual right resting in the insured and thus may be coexistent with the protection under the Workers' Compensation Act.

Id. ¶¶ 12-13, at 1111-12. Thus, we held workers' compensation benefits and UM benefits are not mutually exclusive and the recovery of UM does not require an insured to proceed in tort against the uninsured/underinsured as a condition to recovery under the policy. Id. ¶ 13, at 1113.

¶17 Subsequently, in Torres v. Kansas City Fire & Marine Insurance Co., 1993 OK 32, 849 P.2d 407, we considered another situation remarkably similar to the present case, and concluded that an employee was legally entitled to recover UM benefits under his employer's policy despite receiving workers' compensation benefits.[8] Id. ¶ 1, at 408. In Torres, two coworkers were involved in a single-car accident, resulting in the death of the employee-passenger. Id. ¶ 2, 849 P.2d at 409. The vehicle was owned by the employer and covered by a comprehensive business insurance policy which included a UM endorsement. Id. ¶¶ 2-3, 849 P.2d at 409. The insurer conceded that the deceased employee-passenger was an insured because he was an occupant of the employer's vehicle and met the definition of insured contained in the policy. Id. Additionally, both parties stipulated that the coworkers were in the course and scope of their employment and that each recovered workers' compensation benefits.[9] Id. The trial court determined, as a matter of law, that UM coverage was available. Id. ¶ 4, at 409. Thereafter, the parties proceeded to trial on the issue of employee-passenger's damages attributable to his coworker's negligence, and the jury returned a verdict in the amount of $350,000. Id.

¶18 On appeal, the insurance company argued the UM endorsement was inapplicable because the employee-passenger was not legally entitled to recover damages from the employee-driver because of statutory immunity under Oklahoma's workers' compensation laws. Id. ¶ 5, at 409. We held that the UM endorsement provided coverage despite the exclusivity provision of the Oklahoma Workers' Compensation Act, explaining: "the determining factor is . . . the intention of the parties to the contract . . . that UM coverage would be available once it was determined the party seeking coverage was an insured under the policy, that the uninsured tortfeasor causing damages was at fault and the extent of those damages was shown." Id. ¶ 13, 849 P.2d at 412.

¶19 The federal district judge relied on both Barfield and Torres to conclude Oklahoma precedent allows pursuit of UM proceeds despite receiving workers' compensation benefits. Federated, on the other hand, argues that the Barfield and Torres cases should not apply because they do not address the status of the vehicle. More specifically, it argues that Anaya-Smith has not established that the employer-owned vehicle was an "uninsured motor vehicle" as required for UM coverage to be applicable. To further support this contention, Federated alleges that the Barfield and Torres decisions should not apply because those cases likely involved standard automobile policies that typically include "fellow employee" exclusions which render a vehicle uninsured.

¶20 We are not persuaded by these arguments and will not read language into a policy of insurance that does not exist by mere suggestion or speculation of counsel. Further, we believe the federal district court correctly applied both the Barfield and Torres cases in its ruling on the status of the accident vehicle--it is an uninsured vehicle for purposes of determining UM benefits pursuant to 36 O.S., § 3636. In reaching its decision that the vehicle in this case was uninsured, the district court also referred to the case of Stand v. Hudson Insurance Company, 2017 WL 11474147 (N.D. Okla. 2017). In an order addressing both cases, the Stand court opined:

Barfield and Torres do not specifically discuss whether an immune tortfeasor is uninsured under § 3636, but in both cases the Oklahoma Supreme Court found that an insured could recover UIM benefits when the insured could not directly collect under an automobile liability insurance policy after receiving workers' compensation benefits. Neither Torres nor Barfield makes any sense unless it is implied that an immune tortfeasor is treated as an uninsured motorist as a matter of Oklahoma law . . . . The Oklahoma Supreme Court has not expressly stated that a tortfeasor immune from suit due to the exclusive remedy of workers' compensation is uninsured, but the Court would be ignoring the clear implication of Barfield and Torres if it were to find to the contrary.

Id. at *4.

¶21 We agree and now expressly hold that a tortfeasor, who is immune from suit due to the exclusive remedy of workers' compensation, may be an uninsured motorist as a matter of Oklahoma law. The vehicle involved in the subject accident qualifies as an uninsured motor vehicle pursuant to 36 O.S.Supp.2014, § 3636(C). We therefore answer the first certified question with a "yes." In this case the Decedent was killed as a passenger in an employer-owned vehicle covered by $7,000,000 of liability insurance. Although no proof was submitted to show the claim would exceed $7,000,000, it was unnecessary because the Decedent could not recover under the policy as a result of the workers' compensation exclusive remedy provision in 85A O.S.Supp.2019, § 5. Accordingly, the FADCO vehicle is an uninsured motor vehicle within the meaning of 36 O.S.Supp.2014, § 3636(C), and the Decedent was an insured under the Federated UM policy.

IV. SECOND CERTIFIED QUESTION

Does 36 O.S. § 3636 permit FADCO, a corporate named insured, to purchase uninsured motorist coverage for its directors, officers, partners, owners, and their family members who qualify as insureds, but to reject uninsured motorist coverage for other persons who qualify as insureds?

¶22 The second question requires us to determine whether Oklahoma's statutory UM scheme prohibits a corporate insured from electing, under a general automotive liability policy, to purchase UM coverage for certain executives and/or persons with an ownership interest in the company, while rejecting such coverage for the remaining company employees. We hold that once FADCO opted to purchase UM coverage under its Federated liability policy, all insureds must be treated in a uniform manner; 36 O.S.Supp.2014, § 3636 does not permit the election of UM coverage for some insureds while excluding others.

¶23 Anaya-Smith argues that a policy such as the one purchased by FADCO, which provides UM coverage for one class of insureds, but rejects it for others, is contrary to Oklahoma law and public policy. Title 36 O.S.Supp.2014, § 3636(G) reads:

A named insured or applicant shall have the right to reject uninsured motorist coverage in writing. The form signed by the insured or applicant which initially rejects coverage or selects lower limits shall remain valid for the life of the policy and the completion of a new selection form shall not be required when a renewal, reinstatement, substitute, replacement, or amended policy is issued to the same-named insured by the same insurer or any of its affiliates. Any changes to an existing policy, regardless of whether these changes create new coverage, do not create a new policy and do not require the completion of a new form.

After selection of limits, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or applicant for insurance, the insurer shall not be required to notify any insured in any renewal, reinstatement, substitute, amended or replacement policy as to the availability of such uninsured motorist coverage or such optional limits. Such selection, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or an applicant shall be valid for all insureds under the policy and shall continue until a named insured requests in writing that the uninsured motorist coverage be added to an existing or future policy of insurance.

(emphasis added). Focusing in on the "shall be valid for all insureds" language in § 3636(G), Anaya-Smith argues the named insured must make the same UM election for all insureds. Thus, the named insured only has two choices--purchase the same coverage for all persons who may qualify as insureds or reject coverage for everyone.

¶24 Federated maintains that FADCO validly rejected UM coverage by completing the written form required by 36 O.S.Supp.2014, § 3636(H), but then opted, under that same policy, to purchase UM coverage for FADCO's directors, officers, partners, owners and qualified family members. Thus, Federated argues Smith does not qualify for UM coverage because he does not fall into any of those categories. Additionally, Federated suggests the proper reading of "[s]uch selection, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or an applicant shall be valid for all insureds" in subsection G is to conclude whatever election is made by the named insured is "binding" on all other insureds. Further, Federated maintains there is nothing in Section 3636 which mandates all-or-nothing UM coverage. These arguments are not persuasive.

¶25 When construing statutes, it is this Court's obligation to ascertain legislative intent. Russell v. Chase Inv. Servs. Corp., 2009 OK 22, ¶ 20, 212 P.3d 1178, 1185. Words in a statute are to be construed according to their plain and ordinary meaning unless it is clear the legislature intended a different meaning. Fanning v. Brown, 2004 OK 7, ¶ 10, 85 P.3d 841, 845-46. Rules of construction are not utilized if the language in a statute is unambiguous. Lang v. Erlanger Tublar Corp., 2009 OK 17, ¶ 8, 206 P.3d 589, 591. Section 3636 does not contain an ambiguity; it is straightforward and susceptible to only one reasonable interpretation.

¶26 We agree with Anaya-Smith's reading of § 3636. The language in subsection G clearly requires a named insured to either select, reject or exercise an option not to purchase UM coverage under a policy; yet, whatever choice is made must apply to all insureds equally under the policy. There is simply no other reasonable way of reading the plain text of § 3636(G); the relevant statutory language simply does not permit a named insured to pick and choose which persons are eligible for UM benefits under a policy. First, subsection G uses the term "valid" and not "binding."[10] The term valid is defined as "having legal efficacy or force."[11] Thus, whatever action taken by the named insured is legally effective for all insureds under the same policy. Second, the subsection uses the predicate "such" (defined as "of a kind or character to be indicated"[12]) before selection, rejection, or exercise the option not to purchase, indicating a specific and singular action. Id. Had the statute been written in the plural (ie., "selections, rejections) Federated would certainly have a better argument; however, since the statute is written in the singular, it is apparent the legislature intended one action cover all insureds. Federated contends that the choice for the insured to "exercise the option not to purchase" in the statute would be surplusage if it simply meant the same thing as "rejection." While the phrase "exercise the option not to purchase" does appear redundant (or perhaps even superfluous), the statute in its entirety gives a named insured only two real options elect or reject UM benefits. This is made even more clear when the election form in § 3636(H) is examined.[13] Federated required FADCO to execute two separate forms pertaining to UM coverage--one which mirrored the statutory language in § 3636(H) (Form 1) and a second one that did not (Form 2). Additionally, there are no options in § 3636(G) other than selecting UM in various amounts or rejecting UM coverage.

¶27 Whether an insured may limit UM coverage to certain classes of insureds under § 3636 presents a question of first impression in this state. However, several other states have had the opportunity to consider UM policies providing different levels of coverage to separate classes of insureds to determine if those policies violate public policy. We look to those cases for context, bearing in mind the particular language in each state's statutes. For example, in Varro v. Federated Mut. Ins. Co., 854 So.2d 726 (Fla. Ct. App. 2003) a Florida intermediate court analyzed a UM insurance policy issued by Federated, which contained contrasting UM coverages similar to the one in the case before us. Specifically, the Federated policy included a special endorsement affording UM coverage to any director, officer, partner or owner of the named insurer, and his or her family member who qualify as an insured. Id. at 728. However, this endorsement excluded coverage for "any other person qualifying as an insured." Id. The relevant Florida statute provided that an insured could reject UM coverage "on behalf of all insureds under the policy," but the statute did not permit rejection of UM coverage on behalf of only some insureds under the policy. Id. at 729.[14] The language in the Florida statute is similar to the language in § 3636(G). In fact, the only difference in the two is that the Florida statute applies to a rejection affecting all insureds while Oklahoma's UM statute covers any "selection, rejection, or exercise of the option not to purchase uninsured motorist coverage," and again covers all insureds. 36 O.S.Supp.2014, § 3636(G) (emphasis added).

¶28 Likewise, in Balagtas v. Bishop, 910 N.E.2d 789, 795 (Ind. Ct. App. 2009), an Indiana appellate court determined that its UM statute prohibited rejection of UM/UIM coverage on behalf of some but not all insureds. As in Varro and the Oklahoma statute, the Indiana statute contained distinct language which required any rejection of UM to cover all insureds. The Indiana statute mandated that any "rejection of coverage under this subsection by a named insured is a rejection on behalf of all other named insureds, all other insureds, and all other persons entitled to coverage under the policy." IND. CODE ANN. § 27-7-5-2(b) (West 1999). Although this clause is a little different than § 3636(G), its objectives and mandatory outcomes are the same--a named insured must treat all of its insureds under a UM/UIM policy in a consistent manner. The Balatgas court concluded that a UM policy covered an employee injured in a motor vehicle accident, despite language limiting benefits to directors, officers, partners or owners of the named insured and family members who qualify as insureds. Id. at 796. See also American Family Mut. Ins. Co. v. Federated Mut. Ins. Co., 775 N.E.2d 1198, 1206 (Ind. Ct. App. 2002) ("Federated's attempt to exclude the Browns from uninsured motorist coverage because they are not directors, officers, partners, and owners of the named insured is void under Indiana law and cannot be condoned by this court").

¶29 Federated also relies on cases from outside jurisdictions in support of its argument that the policy exclusion in this case was enforceable. First, Federated points to a decision from the Delaware Supreme Court in Stoms v. Federated Servs. Ins. Co., 125 A.3d 1102 (Del. 2015). While driving a company car, employee David Stoms was killed by an uninsured motorist. Id. at 1104. Diamond Motor had previously opted to provide UM coverage for directors, officers, partners, and owners of the corporation, but rejected UM coverage for all other persons who would qualify as an insured. Id. at 1103-05. Federated denied coverage and Mr. Stoms' wife initiated suit, claiming the exclusion in the insurance policy was invalid because it applied "different levels of uninsured motorists coverage to different drivers." Id. at 1106. Rejecting this argument, the court concluded the coverage scheme did not violate statutory requirements. However, the Delaware UM statute did not contain any language similar to § 3636(G).[15] In fact none of the cases cited by Federated in support of its argument addressing the second certified question are persuasive because the relevant state statutes do not include provisions requiring uniform treatment of all insureds like the clause contained in § 3636(G).[16]

¶30 Although parties to an insurance contract are free to negotiate terms as they see fit, an insurance contract must still comply with Oklahoma law. Ball v. Wilshire Ins. Co., 2009 OK 38, ¶ 27, 221 P.3d 717, 726. In Ball we explained:

When interpreting automobile insurance contracts, the court strives to strike a balance between freedom of contract principles and the state's interest in protecting the public. Statutorily mandated automobile insurance policies bear some characteristics of a public-law obligation under Oklahoma law and the full range of traditional freedom-of-contract principles do not apply. Parties to an insurance contract are nevertheless free to agree upon such terms as they wish, including whether to limit or restrict the insurer's liability, as long as their agreement does not contravene public policy. A contract violates public policy only if it clearly tends to injure public health, morals or confidence in the administration of law, or if it undermines the security of individual rights with respect to either personal liability or private property. Courts exercise their power to nullify contracts made in contravention of public policy only rarely, with great caution and in cases that are free from doubt.

Id. (footnotes omitted). In the present case, the policy does not comply with the requirements set forth in § 3636(G), namely, that any rejection or selection of UM benefits apply uniformly to insureds under a policy. Accordingly, the two-tiered UM coverage under the Federated insurance contract contravenes § 3636(G), and is therefore, void against public policy.

¶31 Therefore, we answer the second certified question in the negative. Title 36 O.S.Supp.2014, § 3636 does not allow FADCO, a corporate named insured, to purchase uninsured motorist coverage for its directors, officers, partners, owners, and their family members who qualify as insureds, but to reject uninsured motorist coverage for other persons who also qualify as insureds under the policy. The policy issued by Federated to FADCO does not comply with Oklahoma law and therefore, Decedent is entitled to recover UM/UIM benefits under the subject policy.

IV. THIRD CERTIFIED QUESTION

If FADCO's insurance policy with Federated violates 36 O.S. § 3636, does the legislative intent or purpose of § 3636 impute the $1,000,000 uninsured motorist coverage policy limit FADCO purchased for its directors, officers, partners, owners, and their family members who qualify as insureds or [does] the $25,000 per person/$50,000 per accident minimum uninsured motorist coverage policy limit in § 3636 [apply] to the other persons who qualify as insureds?

¶32 Again, this Court's discretionary power to answer a federal certified question is set out in 20 O.S.2021 § 1602. We have previously declined to answer federal certified questions for various reasons. See Siloam Springs Hotel, LLC v. Century Sur. Co., 2017 OK 14, ¶ 14, n.1, 392 P.3d 262, 266 (recognizing our prior decisions which declined to answer certified questions). In the present case, the question of what amount would be payable under the Federated policy was not decided by the federal district court and has not been briefed by the parties. Thus, we decline to answer this question in the first instance.

V. CONCLUSION

¶33 We find that under Oklahoma law, a tortfeasor immune from suit due to the exclusive remedy provisions of 85A O.S.Supp.2019, § 5, is an uninsured motorist as a matter of law, and the accident vehicle qualifies as an uninsured motor vehicle pursuant to 36 O.S.Supp.2014, § 3636(C). We also conclude that § 3636 does not permit a corporate named insured to purchase a policy and elect UM coverage for one class of insureds while rejecting UM for other insureds under the same policy. Federated's policy providing optional UM/UIM coverage for its directors, officers, partners, owners, and their family members who qualify as insureds, but allowing a rejection of UM/UIM coverage for other persons who qualify as insureds under the same policy is contrary to § 3636, and thus, Oklahoma public policy. However, we decline to answer the third certified question in the first instance.

CERTIFIED QUESTIONS ANSWERED IN PART.

CONCUR: KAUGER, EDMONDSON, COMBS, GURICH, DARBY (by separate writing), JJ.

CONCUR IN PART, DISSENT IN PART: KANE, C.J. (by separate writing), ROWE, V.C.J, WINCHESTER, KUEHN, J.J.

FOOTNOTES

[1] Appellant's Appendix, A-0102, Federated Mutual Insurance Company Policy No. 9840992, Section II(A), p. 2 of 12.

[2] Appellant's Appendix, A-0102, Federated Mutual Insurance Company, Policy No. 9840992, Section II(A), p. 2 of 12; Appellant's Appendix A-0173, Federated Mutual Insurance Company, Policy No. 9840993, Section IV(A), p. 5 of 10.

[3] Appellant's Appendix, A-0103, Federated Mutual Insurance Company, Policy No. 9840992, Section II(B)(3), p. 3 of 12; Appellant's Appendix A-0173, Federated Mutual Insurance Company, Policy No. 9840993, Section III(A), p. 2 of 10.

[4] Appellant's Appendix, A-0195, Affidavit of Daniel Powers (Federated Property and Casualty Insurance Product Analyst), Attachment D.

[5] Anaya-Smith did not contest the district court's order granting summary judgment to Federated on Anaya-Smith's bad faith claim.

[6] The liability policy also provided the following exclusions:

B. Exclusions
This insurance does not apply to any of the following:

* * *

3. Workers' Compensation
Any obligation for which the "insured" or the insured's' insurer may be held liable under any workers' compensation disability benefits or unemployment compensation law or any similar law.

[7] We cited to 85 O.S.1981 § 45 which provided: "No benefits, savings or insurance of the injured employee, independent of the provisions of this act shall be considered in determining the compensation or benefits to be paid under this act." This statute was superseded by 85 O.S.2011, § 413, and later repealed. The current statute, 85A O.S. 2021 §44, provides that only medical services, or any period of disability provided under a group plan, not paid for by the injured employee, will operate to reduce workers' compensation benefits.

[8] The distinction between the two cases is that the widow of the decedent in Barfield sought to recover UM under the decedent's own policy of insurance; while in Torres, the decedent's beneficiaries sought to recover UM through the employer's policy of insurance. Compare Barfield, 1987 OK 72, ¶ 4, 742 P.2d at 1109, with Torres, 1993 OK 32, ¶ 3, 849 P.2d at 409.

[9] In the case of the employee-passenger, his beneficiaries recovered under the Oklahoma Workers' Compensation Act. Id. ¶ 2, 849 P.2d at 409.

[10] We do not see a significant distinction between the terms valid and binding in this case. The terms are synonyms and lead to the same interpretation of § 3636(G). It should also be noted that a named insured has two basic options under § 3636--select UM benefits or reject them. See 36 O.S.Supp.2014, § 3636(H) (Oklahoma UM election form only allows an insured to accept UM (in varying amounts) or reject the same.

[11] "Valid." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/valid. Accessed 11 Mar. 2024.

[12] "Such." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/such. Accessed 11 Mar. 2024.

[13] The election form provides the insured may make one of four choices about UM coverage:

The following are effective on forms required on or after April 1, 2005. The offer of the coverage required by subsection B of this section shall be in the following form which shall be filed with and approved by the Insurance Commissioner. The form shall be provided to the proposed insured in writing separately from the application and shall read substantially as follows:

OKLAHOMA UNINSURED MOTORIST COVERAGE LAW

Oklahoma law gives you the right to buy Uninsured Motorist coverage in the same amount as your bodily injury liability coverage. THE LAW REQUIRES US TO ADVISE YOU OF THIS VALUABLE RIGHT FOR THE PROTECTION OF YOU, MEMBERS OF YOUR FAMILY, AND OTHER PEOPLE WHO MAY BE HURT WHILE RIDING IN YOUR INSURED VEHICLE. YOU SHOULD SERIOUSLY CONSIDER BUYING THIS COVERAGE IN THE SAME AMOUNT AS YOUR LIABILITY INSURANCE COVERAGE LIMIT.

Uninsured Motorist coverage, unless otherwise provided in your policy, pays for bodily injury damages to you, members of your family who live with you, and other people riding in your car who are injured by: (1) an uninsured motorist, (2) a hit-and-run motorist, or (3) an insured motorist who does not have enough liability insurance to pay for bodily injury damages to any insured person.

Uninsured Motorist coverage, unless otherwise provided in your policy, protects you and family members who live with you while riding in any vehicle or while a pedestrian. THE COST OF THIS COVERAGE IS SMALL COMPARED WITH THE BENEFITS!

You may make one of four choices about Uninsured Motorist Coverage by indicating below what Uninsured Motorist coverage you want:

____ I want the same amount of Uninsured Motorist coverage as my bodily injury liability coverage.

____ I want minimum Uninsured Motorist coverage $25,000.00 per person/$50,000.00 per occurrence.

____ I want Uninsured Motorist coverage in the following amount:

$____________ per person/$______________ per occurrence.

____ I want to reject Uninsured Motorist coverage.

_______________

Proposed Insured

THIS FORM IS NOT A PART OF YOUR POLICY AND DOES NOT PROVIDE COVERAGE.

36 O.S.2011, § 3636(H).

[14] See Fla. Stat. Ann. § 627.727(1) (West 1999) read, "However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy." (emphasis added).

[15] Del. Code Ann. Tit. 18, § 3902 allowed an insured to reject UM coverage in writing, but did not contain a provision similar to Oklahoma's § 3636, which requires such rejection or acceptance of UM benefits apply equally to all insureds.

[16] See Jarrell v. Viking Ins. Co. of Wisc., 2017 WL 1154925 (D. Colo. 2017) (finding Colo. Rev. Stat. Ann. § 10-4-609 allows insured to reject UM and does not impose an all-or-nothing approach); Federated Mut. Ins. Co. v. Vaughn, 961 So.2d 816 (Al. Code § 32-7-23 allows rejection of UM coverage, but statutory language did not require rejection equally for all insureds); Jones v. Federated Mut. Ins. Co., 816 S.E.2d 105, 109 (Ga. Ct. App. 2018) (concluding Ga. Code Ann. § 33-7-11 allowed rejection of UM; statute did not contain language prohibiting tiered UM coverage in favor of some insureds but not others); Hlasnick v. Federated Mut. Ins. Co., 539 S.E.2d 274 (N.C. 2000) (N.C. Gen. Stat. Ann. § 20-279.21 required minimum floor amount of UM benefits but did not contain language requiring equal coverage for all insureds); Rarick v. Federated Service Insurance Company, 325 F.Supp.3d 590, 602 (E.D. Pa. 2018) (the federal court found Pennsylvania's statutory scheme specifically authorized different levels of UM/UIM coverage among different personnel of the insured corporation) (unlike § 3636, nothing in 75 Pa.C.S.A. § 1731 requires selection/rejection of UM on behalf of all insureds).

 

 

DARBY, J., concurring specially:

¶1 I concur in the Court's judgment, but I write separately to further address two important items -- 1) the statutorily required election form to be furnished to prospective insureds regarding uninsured motorist (UM) coverage options, and 2) the language appearing in § 3636, paragraph G.

¶2 First, I would emphasize that the statute requires the offer of uninsured motorist coverage shall be made on a specific form which must be provided to the proposed insured in writing, separately from the application. 36 O.S. Supp. 2014 § 3636(H) (Form provided in majority opinion at footnote 4). Subsection H requires that the UM election form "shall read substantially as" it appears in the statute. Id. While some of the introductory language on the statutory form is geared toward household insurance purchasers and their family members, the substantive section lists the only four choices available to any proposed insured -- the first three choices are to purchase UM coverage (in various coverage amounts), and the fourth choice is to reject UM coverage. There are no options to carve out UM coverage for certain executives or owners, or to reject UM coverage for only certain insureds.

¶3 Federated offered FADCO the option of purchasing UM coverage using the statutory form, where FADCO rejected all UM coverage. (Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and Cross Motion for Summary Judgment, Exhibit 1 - Declaration of Daniel Powers, Exhibit C; Record at A-0193). But on the same day, Federated apparently presented FADCO with an additional form titled "Oklahoma Commercial Auto Coverage Option" which deviated substantially from the election form specified by § 3636 -- offering a two-headed option of purchasing UM coverage for only some of the insureds under the policy, and rejecting UM coverage for other insureds under the same policy. (Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and Cross Motion for Summary Judgment, Exhibit 1 - Declaration of Daniel Powers, Exhibit D; Record at A-0195). Federated's form, and its approach for presenting the statutorily required UM options, does not comply with the law. The statute requires an insured or applicant to purchase UM coverage with stated limits, or reject UM coverage outright, in like manner for all insureds under the policy.

¶4 Second, the language in the statute requires further discussion. Section 3636(G) explains the options available to a named insured or applicant who chooses to reject UM coverage or select lower limits. The first sentence of Section 3636(G) allows an insured or applicant "to reject" UM coverage altogether. The second sentence allows an insured or applicant to select "lower limits" of UM coverage. The remaining provisions in the first paragraph of (G) are not applicable to the issues before us.

¶5 The second paragraph of (G) begins with the word "after" - referring to after the choices made by the insured or applicant pursuant to the prior paragraph. The first line reads: "After selection of limits, rejection, or exercise of the option not to purchase uninsured motorist coverage...." This third option appears to be another way to describe an insured's or applicant's decision to reject UM coverage.

¶6 The third sentence in the second paragraph of (G) begins with the words "Such selection" which is referring back to the "selection of limits" option. The sentence continues with the other two options named in the first sentence of the second paragraph. This line goes on to make clear that whichever option the insured or applicant chooses, it "shall be valid for all insureds under the policy..." The sentence does not end there, but reads further "and shall continue until a named insured requests in writing that the uninsured motorist coverage be added to an existing or future policy of insurance." This creates an ambiguity.

¶7 One interpretation would allow an insured or applicant to first reject UM coverage or select lower limits for all named insureds, then add some amount of UM coverage to some but not all named insureds. But because the legislature used the word "the" to describe whatever UM coverage would be added, in my view the Legislature intended a subsequent choice which would also "be valid for all insureds under the policy." The statute is not completely clear on this point. But reading the statute in context with all provisions therein, and interpreting the provisions consistently, whatever an insured or applicant chooses initially, or subsequently, shall be valid for all insureds under the policy.

 

 

KANE, C.J. CONCURRING IN PART AND DISSENTING IN PART:

¶1 I concur with the first proposition: Where Mr. Smith was injured and killed as a passenger in an employer-owned vehicle that had $7,000,000 of liability insurance and no proof was submitted to show the claim would exceed $7,000,000, but where Mr. Smith cannot recover under the policy because the workers' compensation exclusive remedy provision of 85A O.S., § 5 bars suit against the employer, the vehicle qualifies as an uninsured motor vehicle within the meaning of 36 O.S., § 3636(C).

¶2 However, I dissent to the majority's response to the second certified question: I believe that Oklahoma statutes and public policy allow a named insured, like FADCO, to choose to purchase optional UM coverage for some persons who qualify as an insured (here, its officers, directors, etc.) while rejecting such coverage for any other person who qualifies as an insured.

¶3 I do not agree with the majority's interpretation of 36 O.S., § 3636. There is nothing in the statute or case law which compels a named insured to make an "all or nothing" purchasing decision when it comes to UM coverage and this type of argument has been rejected by courts in other jurisdictions as well. See Jones v. Federated Mut. Ins. Co., 816 S.E.2d 105, 109 (Ga. App. 2018) ("[Plaintiffs] have pointed to no language within the UM Statute as imposing an 'all or nothing' restriction upon uninsured motorist coverage; and we find none."). Such coverage is purely optional under Oklahoma's statutes. While it plainly indicates that a policyholder's coverage decisions bind all other insureds under the policy, there is nothing in the statutory text requiring a policyholder to make the same decision for each class of persons covered under the liability policy. The Majority construes the words in Section 3636(G) according to their plain and ordinary meaning, arguing the statute is unambiguous. To support this argument, the Majority directs us to the statutory language, in that it was written in the singular form (i.e., selection, rejection) as opposed to the plural form (i.e., selections, rejections). See 36 O.S. § 3636(H). The Majority argues it is apparent from the singular language used in Section 3636(H), that the legislature intended only one action cover all insureds. Thus, the statute gives a named insured only two options -- elect or reject UM benefits. I disagree.

¶4 In reaching this conclusion, the Majority had to answer a question of first impression before this Court - whether limiting UM coverage to certain classes of insureds is against public policy. The Majority looked to other states that previously considered UM policies that provided different levels of coverage to different classes of insureds to determine if those policies violated public policies. Anaya-Smith relies on Varro v. Federated Mutual Ins. Co., 854 So.2d 726 (Fla. Dist. Ct. App. 2003) and Balagtas v. Bishop, 910 N.E.2d 789 (Ind. Ct. App. 2009) to support her position that UM statutes which limit UM coverage for certain classes of insureds are against public policy. In Varro, the court held there is "an express statutory policy prohibiting this type of discrimination between insureds" because the Florida UM statute only permits "a written rejection of the coverage on behalf of all insureds under the policy." Varro, 854 So.2d at 729 (internal citations omitted). Similarly, in Balagtas, the Indiana court held that "the election or rejection of coverage must apply to all insureds." Balagtas, 910 N.E.2d at 795.

¶5 However, these cases are distinguishable because the UM statutes in the Varro and Balagtas cases contain very different statutory language than the language used in Oklahoma's UM statute. For example, in Varro, Florida's UM statute requires UM coverage unless "an insured named in the policy makes a written rejection of the coverage on behalf of all insures under the policy." See Varro, 854 So.2d at 728 (emphasis added)(internal citations omitted). Based on that language, the court in Varro ruled that a written rejection must be made for "all" insureds in order for it to be effective. Id.

¶6 Importantly, this language is not present in Oklahoma's UM statute. Instead, Oklahoma's UM statute provides that selection, rejection, or option not to purchase coverage is "valid for all insureds" -- meaning the named insured's decision binds all insureds. See 36 O.S., § 3636(G). In this regard, Oklahoma's UM statutory language is more in line with the majority of other states who have encountered similar types of UM policies, which limit UM coverage for certain classes of insureds, but where their respective state has held the statute as not against public policy.

¶7 For example, in Stoms v. Federated Servs. Ins. Co., 125 A.3d 1102 (Del. 2015), the Delaware Supreme Court addressed the validity of an insurance policy providing for different levels of UM coverage where the applicable statute permitted the insured to reject all UM coverage. In upholding the policy, the court explained:

[o]nce an insured has purchased the statutory minimum, the insured is free as a matter of contract to procure as much or little optional insurance as it wants, and to allocate it among drivers as it chooses . . . To hold that any coverage above the statutory minimum--such as uninsured motorist coverage, for which no level of coverage is statutorily mandated--has to be afforded to all who benefit from a policy would dissuade employers from buying anything above the statutory minimum.

Id. 1106-07. Like the facts in this case, in Stoms, the court upheld the policy which allowed policyholders to elect to obtain UM coverage for certain classes of insureds, specifically its directors, officers, partners, or owners of the employer and to reject it for all other insureds. Id. The Majority tries to distinguish this case from Stoms, despite the overwhelming similarity in the policy/levels of UM coverage for certain classes of insureds. The Majority argues the Delaware UM statute[1] does not contain any language similar to § 3636(G) because it does not "apply equally to all insureds." I find this one distinction unpersuasive. Allowing a policyholder to extend UM coverage to some classes of insureds, rather than limiting their choices to complete rejection or universal acceptance of UM coverage, only furthers the goals of 36 O.S., § 3636.

¶8 Additional courts have reached similar outcomes. See Jarrell v. Viking Ins. Co. of Wisconsin, 2017 WL 1154025, at * 3 (D. Colo. Mar. 28, 2017) ("Given a policyholder's right to decline coverage, Colorado law allows automobile liability policyholders to elect to obtain UM/UIM coverage for some 'insureds' but not others."); Federated Mut. Ins. Co. v. Vaughn, 961 So.2d 816, 819 (Ala. 2007)(". . . because the greater typically includes the lesser, the right to [totally] reject [sic] UM coverage implies the right to reject it partially."); Hlasnick v. Federated Mut. Ins. Co., 539 S.E.2d 274, 277 (N.C. 2000) (rejecting public policy argument because statute did not mandate that UM coverage be equally applied to all insureds); Rarick v. Federated Service Ins. Co., 325 F.Supp.3d 590, 601-03 (E.D.Pa. 2018) (rejecting public policy challenge to providing different levels of UM coverage).

¶9 While the cases referenced above can provide guidance, it is Oklahoma law and public policy that determines the outcome of this case. In this regard, we have instructed that:

[T]he insurance coverage contract required by statute is to be liberally construed in favor of the object to be accomplished . . . . The primary purpose of including the uninsured motorist coverage in an insurance policy is to protect the insured from the effects of personal injury resulting from an accident with an uninsured/underinsured motorist.

State Farm Auto. Ins. Co. v. Greer, 1989 OK 110, ¶ 6, 777 P.2d 941, 942. "However, once it appears that the legislative purpose of § 3636 has been served, the statute's mandate is satisfied." May v. Nat'l Union Fire Ins. Co. of Pittsburg, Pennsylvania, 1996 OK 52, ¶ 13, 918 P.2d 43, 48. Moreover, "[w]hen interpreting automobile insurance contracts," a court should strive "to strike a balance between freedom of contract principles and the state's interest in protecting the public." Ball v. Wilshire Ins. Co., 2009 OK 38, ¶ 27, 221 P.3d 717, 726. Thus, "[p]arties to an insurance contract are . . . free to agree upon such terms as they wish, including whether to limit or restrict the insurer's liability, as long as their agreement does not contravene public policy." Id.

¶10 The Oklahoma Legislature, not this Court or Congress, is primarily vested with the responsibility to declare public policy of this state. See Siloam Springs, 2017 OK 14, ¶ 21, 392 P.3d at 268. We have had occasion to find contracts to contravene public policy but only when said contract "clearly tends to injure public health." Shepard v. Farmers Ins. Co., 1983 OK 103, ¶ 3, 678 P.2d 250, 251. We have previously instructed that the power to invalidate a contract should be exercised "rarely, with great caution and in cases that are free from doubt." Id. 

¶11 We have interpreted 36 O.S., § 3636 and the limits of UM coverage numerous times over the years. In Shepard v. Farmers Insurance Co., 1983 OK 103, 678 P.2d 250, in a response to a certified question, we considered whether a clause in a UM endorsement excluding a relative of the insured living in the same household if the relative owned an automobile violated the public policy expressed in 36 O.S., § 3636. Id. We held the exclusion was "an unambiguous contract provision" that did not contravene the UM Act nor its underlying public policy of providing coverage for tortious conduct which would otherwise go uncompensated. Id. ¶ 8, at 251-52. In reaching this conclusion, we distinguished the exclusion from those exclusions we had previously invalidated noting that the plaintiff had not paid a premium for the policy and was not defined as an insured by virtue of the policy terms. Id. ¶ 7, at 252.

¶12 Next, in Graham v. Travelers Insurance Co., 2002 OK 95, ¶ 1, 61 P.3d 225, 226-27, the issue before us was whether, in a commercial policy, UM/UIM coverage that provided for vehicles owned by the named insured must also be provided to employees using their own personal vehicles, which was limited by an endorsement to liability coverage. Id. Graham was driving his personal vehicle while in the course and scope of his employment when he was injured by an uninsured driver. Id. ¶ 3, at 227. The employer maintained an automobile policy that included UM/UIM coverage. Id. The policy provided liability insurance for employees using personal vehicles on company business, but limited UM coverage to only company owned vehicles. Id. ¶¶ 9-13, at 228-29. Because Graham was driving a personal vehicle at the time of the accident, the Court found that "Graham's vehicle clearly was insured for liability and was not insured, under the provisions of the policy, for UM/UIM." Id. ¶ 13, at 229.

¶13 Graham argued, like Anaya-Smith does here, that those covered for liability must also be covered for UM/UIM under Oklahoma's UM statute. Id., ¶ 5, at 227. However, we rejected these arguments in Graham, pointing out that the employer and the insurer are the parties to the contract, the employer paid the premium, and the employer accepted UM/UIM coverage and limited it to company-owned vehicles. Id. ¶¶ 18-19, at 229-30. We concluded that an employer is "free to exclude employees operating their own vehicles from UM/UIM coverage through the method of limiting UM/UIM coverage to vehicles owned by the company." Id. ¶ 21, at 230. However, we did emphasize an important part of our decision was that Graham owned the vehicle involved and thus, had "the opportunity to accept or reject UM/UIM coverage for his personal protection." Id. ¶ 20, at 230.

¶14 In Ball v. Wilshire Insurance Co., 2009 OK 38, ¶¶ 25-26, 221 P.3d 717, 725-26, in a response to another certified question, we considered whether an insurer who denied UM benefits to a passenger based on an invalid exclusion in a liability policy acted in bad faith. In Ball, we re-examined our previous case law and emphasized the need to "protect the policyholder's choice of self and family protection" but at the same time, noted that there was no clear expression in our case law obligating the insured to provide UM protection to persons merely by reason of their occupancy in a vehicle belonging to a named insured. Id. ¶ 34, at 729. We concluded the insurer had not acted in bad faith because the law was unsettled under these facts. Id.

¶15 More recently, in Lane v. Progressive Northern Insurance Co., 2021 OK 40, ¶ 1, 494 P.3d 345, 346, in a response to a certified question, we considered whether an exclusion which operates to deny UM coverage to an insured who recovers at least the mandated minimum in the form of liability coverage contravenes § 3636. We held the exclusion invalid because it effectively annulled UM coverage for which a premium had been paid. We concluded:

. . . the exclusion does not merely modify the scope of available uninsured-motorist coverage--it outright negates that coverage. While the policyholder holds an option to accept uninsured-motorist coverage, the insurer carries an obligation to provide it. Section 3636 requires uninsured-motorist coverage separate from liability coverage, whether it is provided within or supplemental to the basic liability policy. Progressive's blanket exclusion effectively ensures that only one form of coverage--for motor-vehicle liability--will ever be available, even though its policyholder has paid for both.

Id. ¶ 13, at 250. We emphasized in Lane that the purpose of § 3636 "is to 'assure each [UM insured] person the full contracted coverage' for which a premium has been paid." Id. ¶ 16, at 351 (internal citations omitted). Because the policyholders paid premiums for UM coverage that expressly included the plaintiff, the insurer's artfully drafted exclusion could not be allowed to dilute that coverage. Id. ¶¶ 16-17, 19, at 251-53.

¶16 In short, based on the analysis above, I conclude that FADCO's choice to select UM coverage for some classes of insureds and reject UM coverage for others does not contravene the express language of the Oklahoma Uninsured Motorist Act nor its underlying policy of providing coverage for tortious conduct which would otherwise go uncompensated. Section 3636 requires insurers to supply uninsured-motorist coverage in addition to standard liability coverage, but it offers the insured a choice: accept, reject, or select lower limits. There is no dispute that Federated offered FADCO the option of accepting or rejecting UM insurance via the statutorily approved form, and FADCO chose to reject coverage. FADCO then chose to provide UM coverage to directors, officers, and certain others by executing a separate form.

¶17 Had FADCO rejected all UM coverage outright, the policy would be in compliance with the statute although Anaya-Smith would have no claim to benefits. If an outright rejection for all persons is permissible, then providing additional coverage for at least some persons does not contravene the statute's text or purpose. As we explained in Ball, "[e]xtensive safeguards have been enacted in § 3636 to make certain that the policyholder's choice is knowingly and freely made, but the decision to purchase or decline to purchase UM coverage is left to the policyholder." Ball, 2009 OK 39, ¶ 28, 221 P.3d at 727. Here, the limitation on UM coverage was an unambiguous contract term agreed to by the parties -- FADCO and Federated. Pursuant to these terms, the decedent "clearly was insured for liability and was not insured, under the provisions of the policy, for UM/UIM." See Graham, 2002 OK 95, ¶ 13, 61 P.3d at 229. Allowing a policyholder to extend UM coverage to some classes of insureds, rather than limiting their choices to complete rejection or universal acceptance of UM coverage, only furthers the goals of 36 O.S., § 3636 -- to promote and safeguard UM coverage -- while still honoring freedom of contract principles. See id. This conclusion recognizes the Court's power to nullify contracts in contravention of public policy and that this power should be exercised "rarely, with great caution and in cases that are free from doubt." Ball, 2009 OK 38, ¶ 27, 221 P.3d at 726.

¶18 Therefore, I would answer the second certified question with a "yes." Title 36 O.S. § 3636 does allow FADCO, a corporate named insured, to purchase uninsured motorist coverage for its directors, officers, partners, owners, and their family members who qualify as insureds, but to reject uninsured motorist coverage for other persons who qualify as insureds. The policy issued by Federated to FADCO does not contravene Oklahoma law or public policy. Thus, the insured should be able to decide the scope of what optional UM coverage it wants to pay for, and what it does not want to pay for.

¶19 The third certified question does not require a response if the second question is answered correctly.

¶20 I respectfully dissent.

FOOTNOTES

[1] 18 Del Code § 3902(a)(1) provides:

No such coverage shall be required in or supplemental to a policy when rejected in writing, on a form furnished by the insurer or group of affiliated insurers describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy or upon any reinstatement, substitution, amendment, alteration, modification, transfer or replacement thereof by the same insurer unless the coverage is then requested in writing by the named insured. The coverage herein required may be referred to as uninsured vehicle coverage.

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1987 OK 72, 742 P.2d 1107, 58 OBJ 2305, 
Barfield v. Barfield
Discussed at Length

 
1989 OK 110, 777 P.2d 941, 60 OBJ 1781, 
State Farm Auto. Ins. Co. v. Greer
Discussed

 
1993 OK 32, 849 P.2d 407, 64 OBJ 995, 
Torres v. Kansas City Fire and Marine Ins. Co.
Discussed at Length

 
2002 OK 95, 61 P.3d 225, 
GRAHAM v. TRAVELERS INSURANCE COMPANY
Discussed at Length

 
2004 OK 7, 85 P.3d 841, 
FANNING v. BROWN
Discussed

 
1996 OK 52, 918 P.2d 43, 67 OBJ 1262, 
May v. National Union Fire Insurance Co.
Discussed

 
2009 OK 17, 206 P.3d 589, 
LANG v. ERLANGER TUBULAR CORP.
Discussed

 
2009 OK 22, 212 P.3d 1178, 
RUSSELL v. CHASE INVESTMENT SERVICES CORP.
Discussed

 
2009 OK 39, 213 P.3d 570, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SPRADLING
Cited

 
2009 OK 38, 221 P.3d 717, 
BALL v. WILSHIRE INSURANCE CO.
Discussed at Length

 
2017 OK 14, 392 P.3d 262, 
SILOAM SPRINGS HOTEL, LLC v. CENTURY SURETY COMPANY
Discussed at Length

 
2020 OK 28, 473 P.3d 22, 
HAMILTON v. NORTHFIELD INSURANCE CO.
Discussed

 
2021 OK 40, 494 P.3d 345, 
LANE v. PROGRESSIVE NORTHERN INSURANCE CO.
Discussed

 
1983 OK 103, 678 P.2d 250, 
Shepard v. Farmers Ins. Co., Inc.
Discussed at Length

Title 20. Courts

 
Cite
Name
Level

 
20 O.S. 1602, 
Power to Answer
Cited

Title 36. Insurance

 
Cite
Name
Level

 
36 O.S. 3636, 
Uninsured Motorist Coverage
Discussed at Length

Title 85. Workers' Compensation

 
Cite
Name
Level

 
85 O.S. 413, 
Repealed
Cited

 
85 O.S. 45, 
Repealed
Cited

Title 85A. Workers' Compensation

 
Cite
Name
Level

 
85A O.S. 5, 
Exclusivity
Discussed at Length

 
85A O.S. 44, 
Benefits Payable Reduced by Benefits Received - Disclosure by Claimant
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA